Filed 1/12/18

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GOLDEN EAGLE LAND INVESTMENT, L.P., et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> RANCHO SANTA FE ASSOCIATION, <br><br> Defendant, Respondent and Appellant. | D069872 <br><br><br> (Super. Ct. No. 37-2015-00029425-CU-OR-NC) |

APPEAL and cross-appeal from an order of the Superior Court of San Diego County, Timothy M. Casserly, Judge. Affirmed in part and reversed in part.

Niddrie Addams Fuller, David A. Niddrie, John S. Addams; Wingert Grebing Brubaker & Juskie, Alan K. Brubaker and Andrew A. Servais for Plaintiffs and Appellants.

Epsten Grinnell & Howell, Anne L. Rauch and William S. Budd for Defendant and Appellant.

This is an appeal and cross-appeal from an anti-SLAPP ruling which granted the defense motion to strike in part and denied it in part. (Code Civ. Proc.,[1] § 425.16.) Plaintiff and appellant Golden Eagle Land Investment, L.P. (Golden Eagle) and its coplaintiff and appellant Mabee Trust (the Trust; sometimes together, Appellants)[2] own real property in the vicinity of Rancho Santa Fe. Appellants sought approvals for their proposed joint development project (the project) from land use authorities at the County of San Diego (the County). At the same time, they began the process of seeking land use approvals for the project from defendant, respondent and cross-appellant, the Rancho Santa Fe Association (the Association or RSFA), whose activities in this respect are governed by a protective covenant and bylaws, as well as County general planning.

Appellants sued the Association on numerous statutory and tort theories, only some of which were pled by the Trust, for injuries caused by allegedly unauthorized discussions and actions by the Association in processing the requested approvals, in communicating with County authorities and others. Appellants contend that these Association activities and communications took place without adequate compliance with

---

[1]    All statutory references are to the Code of Civil Procedure unless otherwise specified. "SLAPP" refers to "strategic lawsuits against public participation." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 85, fn. 1 (*Navellier*).)

[2]    The Larry Gene Mabee Revocable Trust UDT 5/17/2005 as Amended and Restated UDT 12/7/2012 ("the Trust") owns property in Rancho Santa Fe and appears here through its successor cotrustees, Laura E. Boswell, et al., who claim membership status in the Association as owners of building sites within the Association's jurisdiction. Boswell took the lead in the Trust's development efforts, as will be explained *post*. The Trust is a named plaintiff in only five of the nine causes of action (fraud-type and business interference claims), while Golden Eagle pursues them all (same, plus breach of the Association's governing documents, etc.).

2

the Common Interest Development Open Meeting Act ("Open Meeting Act"; Civ. Code, §§ 4900 et seq., 4955 [civil action for declaratory or equitable relief may be brought by an association member for a violation of that Act's provisions]).[3]

On appeal, Appellants challenge the trial court's order granting in large part (eight out of nine causes of action) the Association's special motion to strike their complaint, based on each of the two prongs of the anti-SLAPP test. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon*) [first prong of test for statutory application asks if cause of action arises from protected activity].) Appellants contend that none of these related tort and bylaws claims arose out of or involved protected Association activity, but rather they are mixed causes of action that are "centered around" alleged earlier false promises by Association representatives to abide by the provisions of the Open Meeting Act.[4] Appellants argue that even if the Association's land use planning activities are deemed to be protected in nature, Appellants can satisfy the second prong of the test, that they will probably prevail on their legally sufficient claims. They argue they are the equivalent of qualified "members" who own property within the

---

[3]      Civil Code section 4930, subdivision (a) in the Open Meeting Act provides that in most cases, "the board may not discuss or take action on any item at a nonemergency meeting unless the item was placed on the agenda included in the notice that was distributed [to members in advance] pursuant to subdivision (a) of section 4920."

[4]      The related tort claims, as enumerated by both Appellants, include causes of action (3) false promise; (4) negligent misrepresentation; (5) promissory estoppel; (6) intentional interference with economic advantage; and (7) negligent interference with economic advantage. The bylaws and fiduciary duty claims are alleged solely by Golden Eagle.

Association's jurisdiction, and can therefore seek relief against it.  (§ 425.16, subd. (b)(1).)[5]

The trial court denied the Association's motion as to one remaining cause of action, in which Golden Eagle alone alleged violations of the Open Meeting Act.  The court ruled that the Association's challenged conduct in that respect was not on its face entitled to the benefits of section 425.16, because it did not fall within the statutory language that defines protected communications during "official" proceedings. (§ 425.16, subd. (e)(1) & (2).)  On that cause of action only, the trial court did not find it necessary to reach the second portion of the statutory test under the anti-SLAPP statute, on whether Appellants are able to establish a probability that they will prevail on their claims.

The Association cross-appeals that portion of the order, arguing the trial court erred as a matter of law in finding the anti-SLAPP statute was inapplicable by its terms. With regard to this cause of action, and further as to Golden Eagle's other "Association-based" claims (breaches of fiduciary duty and/or Association bylaws and/or its covenant of good faith and fair dealing with its members), the Association contends that Golden Eagle could not show entitlement to sue or prevail against the Association on those four theories that are alleged by it alone.  Although the Trust provided judicially noticeable

---

5    The Association's bylaws define its membership in good standing as requiring ownership of a building site covered by the Association's land use covenant and payment of assessments to the Association.

materials to the trial court of its ownership of property entitling it to membership in the Association, Golden Eagle did not do so.

"The Legislature spelled out the kinds of activity it meant to protect in section 425.16, subdivision (e): 'As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, . . . or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.' " (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 422.) The Association's motion attempted to invoke all of the above categories of protections except section 425.16, subdivision (e)(3), the "public forum" definition (statements made in public forum "in connection with an issue of public interest").

As instructed in *Baral v. Schnitt* (2016) 1 Cal.5th 376, 395 (*Baral*), we examine the complaint to determine whether its claims make allegations of protected activity for the purpose of asserting them as grounds for relief. On de novo review of the order, we conclude that the trial court correctly applied the anti-SLAPP statutory scheme in granting the Association's motion to strike the second through ninth causes of action, as variously alleged by one or both Appellants. The statute is applicable to the protected

communicative conduct that allegedly gave rise to these claims for relief, and Appellants failed to make an adequate showing of their probability of prevailing on those theories. (§ 425.16, subd. (b)(1).)

We reverse the order in part, concluding that the trial court should have granted the motion to strike the first cause of action regarding alleged violations of the Open Meeting Act. The Association's challenged land use communications, on the subject of governmental entitlement applications, amount to protected conduct described in section 425.16, subdivision (e)(4), as carried out "in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." It is unnecessary in this case to decide whether the Association's challenged communications took place in the context of "official" proceedings within the meaning of section 425.16, subdivision (e)(1) and (2). (See *Talega Maintenance Corp. v. Standard Pacific Corp.* (2014) 225 Cal.App.4th 722, 727-728 (*Talega*) [other cases have analyzed anti-SLAPP motions arising from homeowners association board meetings under the rubrics of § 425.16, subd. (e)(3) & (4)].)

Moreover, on the current record, Appellants are unable to show that Golden Eagle, the only plaintiff on that claim, qualifies as an Association member who has standing to seek remedies pursuant to the Open Meeting Act and who will probably prevail on them. (§ 425.16, subd. (b)(1).) We reverse the order with directions to the trial court to grant the motion to strike in full, and to allow further proceedings on any application for attorney fees that may be brought. (§ 425.16, subd. (c).)

6

# I

## BACKGROUND

We will outline the background facts in a somewhat abbreviated manner, since the purpose of this opinion is not to resolve the merits of the overall dispute, but rather to determine whether the anti-SLAPP statutory scheme properly applies to this set of allegations concerning the parties' interactions. More facts will be added as appropriate in the discussion portion of this opinion.

### A. *Nature of Dispute; Complaint*

Golden Eagle, a limited partnership, owns a parcel of property in the Rancho Santa Fe area that it wants to develop, together with larger parcels that are owned by the Trust, to make a 28-acre housing and amenities project for senior citizens (Rancho Librado), that would consist of 50 attached and four detached single family residential units. This project would represent a higher population density than the usual type of development in the Rancho Santa Fe area.

The complaint does not fully identify the distinction between the two Appellants, simply alleging both "Plaintiffs' real property lies within [the RSFA boundaries] and the County of San Diego." As more specifically described in the complaint, the Project would be developed "*on the Subject Property*," defined as those parcels owned by the Trust. Somewhat inconsistently, the complaint also admits that the Project's boundaries would extend into Golden Eagle's portion of the property, which would need to be annexed into the covenant area before such approvals could be granted, and annexation

7

will require separate proceedings before the Association, including a vote among its 3,000-some members.

As a proposed developer, Golden Eagle filed a separate application to the County's planning and development services department in September 2014, seeking to amend the general plan to allow development of the project. Golden Eagle also made preliminary inquiries and presentations to the Association about pursuing an application for its approvals. The Association's bylaws prescribe procedures for development approvals, to be processed by the Association's board of directors (board) and subcommittees, according to its protective covenant and existing zoning designations primarily allowing two-acre lot homes. The Association's regulations are subject to the County's general plan requirements on residential density.

Appellants allege in each cause of action that the Association, through its board, has unfairly prejudged the project and taken action to undermine and effectively kill it through messages to the County, despite previous assurances otherwise by the Association's board president, Ann Boon. Golden Eagle's "Association-based" causes of action challenge the Association's way of doing business, specifying claims of (2) breach of fiduciary duty; (8) breach of covenant of good faith and fair dealing; and (9) breach of the Association's bylaws setting forth standards for giving notice of meetings. Both Appellants bring causes of action for (3) fraud or false promise; (4) negligent misrepresentation; (5) promissory estoppel; (6) intentional interference with economic advantage; and (7) negligent interference with economic advantage. Compensatory and

8

punitive damages or restitution are sought, for amounts previously expended on approvals for the Project (over $1.6 million in consultant fees), and lost profits.

Appellants' general allegations specify a list of eight actions by the Association during 2014-2015 that are said to amount to bad faith opposition to the project, in both the Association and County forums. The description of these incidents is incorporated into all causes of action generally, and in some cases specifically (fiduciary duty and implied covenant breaches). Generally, Appellants allege that the Association wrongfully acted in an adversarial manner toward their project, in letters, e-mails, and meetings, after initially treating it favorably in 2014 when Golden Eagle first sought zoning changes from the County. Such unfavorable acts included the late April-May 2015 e-mail exchange between the Association's board's president Boon and Appellants' trustee Boswell, about Appellants' pending application to the County to amend the general plan, at a time that the Association was placing an "informational only" discussion on its agenda as an item for a May 7, 2015 meeting. This e-mail exchange included Appellants' request to postpone that meeting so they could meaningfully participate in it, since their design professional Ali Shapouri was unavailable that date.

As part of this exchange, the Association's president Boon assured Appellants in her April 30, 2015 e-mail that the "board has no intention of undermining or interfering in any way with your effort to bring the county's entitlements in line with the Covenant. [¶] On May 7th, our board will hear from various members of RSFA who are concerned about the impact on the rural character of the RSF community by high density developments. As a RSFA member, you are certainly welcome to attend and to

9

comment. All the board members except for me have already heard your presentation. Nevertheless, if you would like to present again in the future, you are most welcome to do so. We will still have time on the agenda for you to present on May 7th, should you so choose." The Association refused to postpone the meeting, noting that a County hearing on the project was scheduled for the next week and it would be appropriate to receive community input before then.

Appellants alleged that the May 7 board meeting included illegal discussions of the project among the board and Association members, without adequate compliance with the requirements of the Open Meeting Act, because its agenda inadequately described the "presentation on high density housing" to be made (item 5), and a 2006 resolution about an earlier, similar project (item 6), without identifying Appellants' project by name. Appellants also claim that the board wrongfully opposed their efforts to obtain the County's approvals before they had applied for the Association's approvals, and wrongfully gave project opponents access to Appellants' Association files.

After the May 7 meeting was completed, the Association had its manager write a May 11, 2015 letter to the County, stating in relevant part as follows:

> "*The Association Board has still not taken any action on this matter as the property owners have yet to formally submit to the Association. That said,* two factors have combined to cause the Board to direct me to write to you again: [¶] 1. It has been communicated to the Board that the positive and polite feedback given by some Board members during a consultant presentation on the proposed project during the May 15, 2014 meeting may have been interpreted by the consultant, and may have subsequently been presented to the County, as if the Association is in full support of this project. Please allow this letter to once again clarify this issue as such a statement would not be accurate. *Until an application has*

10

*been received and reviewed by the Association's CDRC, the*
*Association cannot take any formal position on the proposed project.*
[¶] 2. At the Association's May 7, 2015 Board Meeting, many
affected Association neighbors made a presentation to the Board as
they were very concerned about the proposed project and its
significant upgrade in density." (Italics added.)[6]

The Association's manager's May 11, 2015 letter to the County reminded the

County planners that under the current general plan, the location of the proposed project

designated only one home for every two acres for this property, while the proposed new

development as currently constituted calls for approximately two homes per acre. The

letter noted that the proposed project "spans a site under both County and Association

jurisdictions." Several hundred Association members had signed petitions raising

concerns about the project, having to do with "significantly increased housing density,

potable water usage in this time of historic drought, and potentially significant traffic

impacts." The letter stated that after much discussion, "*the Board voted unanimously at*

*the May 7th meeting to request that the County adhere to and enforce the current County*

*General Plan 2020 land use and zoning for this property at this time*. [¶] Finally, and as

a side bar, it would seem that any change of land use of any kind for this parcel at this

time might be premature as: the required Association approval of a specific project plan

has not yet been achieved, and in the absence of an understanding of what the totality of

the project is, how can Environmental Review under the California Environmental

Quality Act proceed? [¶] The Association has strongly encouraged the property owners

to submit to the CDRC soon to get the required Association Design Review Process on

---

6       The Association's CDRC is its Covenant Design Review Committee.

11

track. We hope to begin this work with the property owners soon. This iterative and collaborative process is not only a requirement for the Rancho Santa Fe Association Protective Covenant, but it is also vital to protecting community character and engaging neighborhood feedback — two important core principles for both the Rancho Santa Fe Association and the County of San Diego." (Italics added.)

The complaint further alleges that the Association refused to rescind this letter to the County when Appellants demanded that they do so. They allege that these actions "doomed" the project, and seek damages or restitution of over $1.6 million for monies expended or lost profits.

### B. Motion and Ruling

The Association filed a motion to strike the complaint under the anti-SLAPP statute, supported by declarations from its board president Boon and an attorney declaration, both of which referred to numerous lodged exhibits (to be described in more detail in the discussion portion of this opinion). The Association requested and received judicial notice of a federal court decision establishing its nonprofit status.

In opposition, Appellants supplied declarations from the Trust's cotrustee Boswell, and from their consultant, Pete Smith, a former general manager of the Association. Smith refers to the Trust and Golden Eagle collectively as "Golden Eagle," for purposes of his description of the application process for the project. Smith's declaration gave his opinion that the Association was not treating that defined entity, Golden Eagle, in the same way as "other Association members." Appellants' declarations authenticated numerous lodged documents, including the May 7, 2015 agenda, listing as item 5, a

12

"presentation on high density housing," and item 6, a review of a 2006 planning committee study and board decision, regarding a previous such application. In general, Appellants argued that their project was effectively defeated by the Association's failure to comply with the Open Meeting Act restrictions on discussions going beyond agenda items, where there was no emergency meeting. (Civ. Code, § 4930, subd. (a).)

In its reply papers, the Association objected that there were potential standing problems as to Golden Eagle, a nonowner of building sites within the covenant area of the Association, since no annexation had yet occurred. The Association argued the record was unclear as to whether all Appellants had paid assessments and were members in good standing who were subject to the covenant's land use restrictions.

In response, Appellants provided judicially noticeable materials establishing that the Trust owns several parcels of buildable real property within the covenant area. No showing was included that the Trust or the individual trustees pay Association assessments.

After considering the pleadings, the evidence in support of and in opposition to the anti-SLAPP motion, and holding a hearing, the court issued a detailed minute order denying the motion as to Golden Eagle's Open Meeting Act cause of action (no. 1), determining that the alleged Association activity did not qualify under section 425.16, subdivision (e)(1) and (2) as an "official proceeding." The court took judicial notice, as requested by Appellants, of the Trust's ownership of property within the covenant area, and made other evidentiary rulings (to be discussed as necessary, *post*). In applying the first prong of the statutory analysis, the court determined that each of the eight other

13

causes of action fell within the scope of the anti-SLAPP statutory scheme, as pleading protected conduct by the Association.

The ruling next determined that once the burden had been shifted to Appellants, they were unable to show their probability of prevailing on their eight remaining claims (both Association-based and tort, as will be discussed more specifically, *post*). Each side has appealed. (§ 425.16, subd. (i).)

II

*APPLICABLE STANDARDS*

A. Review

We review de novo the trial court's rulings on this special motion to strike. (*Kleveland v. Siegel & Wolensky, LLP* (2013) 215 Cal.App.4th 534, 548 (*Kleveland*).) Under the two-step analysis required by the anti-SLAPP statutory framework, "[t]he court is first to determine if the lawsuit falls within the scope of the statute, as arising from protected activity (generally, petitioning or free speech). [Citations.] The defendant bears the burden of demonstrating that a cause of action in the lawsuit is one 'arising from' protected activity. (§ 425.16, subd. (b)(1).)" (*Kleveland*, *supra*, at p. 548; *Equilon Enterprises, supra,* 29 Cal.4th at p. 67.)

In applying the second prong of the statute, the courts examine whether the plaintiff has "demonstrated a probability of prevailing on the claim." (*Navellier, supra,* 29 Cal.4th at p. 88.) "Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' [Citation.] For purposes of

14

an anti-SLAPP motion, '[t]he court considers the pleadings and evidence submitted by both sides, but does not weigh credibility or compare the weight of the evidence. Rather, the court's responsibility is to accept as true the evidence favorable to the plaintiff. . . .' " (*Kleveland*, *supra*, 215 Cal.App.4th at p. 548; *HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212 (*HMS Capital, Inc.*).) The plaintiff may not rely solely on the pleading's allegations to establish that the claims have " 'minimal merit.' " (*Kleveland, supra,* at p. 548.)

"The anti-SLAPP procedures are designed to shield a defendant's constitutionally protected conduct from the undue burden of frivolous litigation. It follows, then, that courts may rule on plaintiffs' specific claims of protected activity, rather than reward artful pleading by ignoring such claims if they are mixed with assertions of unprotected activity." (*Baral, supra,* 1 Cal.5th at p. 393; italics omitted.) The term "cause of action" as found in motions under section 425.16, subdivision (b)(1) is to be interpreted in a particular way, as allowing the targeting only of "claims that are based on the conduct protected by the statute." (*Baral*, *supra*, at p. 382.) Where the allegations of protected activity themselves are asserted as grounds for relief, they are subject to being stricken:

> "The targeted claim must amount to a 'cause of action' in the sense that it is alleged to justify a remedy. By referring to a 'cause of action against a person arising from any act of that person in furtherance of' the protected rights of petition and speech, the Legislature indicated that particular alleged acts giving rise to a claim for relief may be the object of an anti-SLAPP motion. [Citation.] Thus, in cases involving allegations of both protected and unprotected activity, the plaintiff is required to establish a probability of prevailing on any claim for relief based on allegations of protected activity. Unless the plaintiff can do so, the claim and its corresponding allegations must be stricken. Neither the form of the

15

complaint nor the primary right at stake is determinative." (*Baral*, *supra*, 1 Cal.5th 376, 395; italics omitted.)

In contrast, where an allegation in a pleading is " 'merely incidental' or 'collateral,' " it is not properly subject to being stricken under section 425.16. (*Freeman v. Schack* (2007) 154 Cal.App.4th 719, 733.) "Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral*, *supra,* 1 Cal.5th at p. 394.) The proper procedure in this context has been clarified in this way:

> "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage. If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken. Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." (*Baral*, *supra*, 1 Cal.5th 376, 396.)

### B. Scope of Record and Issues Presented

Pending appeal, the Association brought requests that were deferred for decision to this merits panel: (1) For judicial notice of a recorded grant deed to Golden Eagle's parcel of property, as an exhibit to the request; and (2) for an order striking portions from Appellants' reply brief and supporting material (i.e., two additional declarations from Golden Eagle's land use consultants, filed as opposition to the Association's judicial

16

notice request).  We denied the requested judicial notice.  (See *Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 760-761 ["[J]udicial notice can be taken of matters not reasonably subject to dispute, but cannot be taken of matters shown to be reasonably subject to dispute."].)  Where the proposed material to be noticed is subject to interpretation as to its legal significance, it does not fall within the scope of appropriate judicial notice on appeal.  (*Id.* at p. 761; *L.B. Research & Education Foundation v. UCLA Foundation* (2005) 130 Cal.App.4th 171, 180, fn. 2; *Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1375 ["While courts take judicial notice of public records, they do not take notice of the truth of matters stated therein."]; *Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 374 ["Taking judicial notice of a document is not the same as accepting the truth of its contents or accepting a particular interpretation of its meaning."].)

To the extent that the Association was requesting that we strike portions of the combined reply and cross-respondents' brief or other material, we denied the motion.  In the course of reviewing an appeal, our practice is to disregard improper argumentation and baseless statements of fact.  (See *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [normally, when reviewing the correctness of a trial court's judgment or order, an appellate court will consider only matters which were part of the

17

record at the time the judgment was entered].)[7] We are able to decide this matter based on the record presented, taking the briefs as written advocacy rather than evidence.

In the usual method for analysis, we would initially address the issues raised by the appeal before turning to the cross-appeal. In this case, we deem it more appropriate to follow the order of the causes of action as pled, particularly because Appellants freely admit that each of their tort and covenant based causes of action and claims are "centered around" and founded in the Association's alleged noncompliance with the requirements of the Open Meeting Act, as facts incorporated into all other claims. We next address the Association's contentions regarding the applicability of the anti-SLAPP statutory scheme to Golden Eagle's claims about Open Meeting Act requirements. We then turn to Golden Eagle's other Association-based claims, and issues of standing to sue (pt. IV, *post*). Finally, we will address the propriety of the order striking the tort claims pled by both

---

[7] In opposition to the Association's judicial notice request on appeal, Appellants submitted new declarations and argued that even if the Association's land use planning activities are deemed to be protected in nature, Appellants can show their probability of prevailing on claims, by theorizing that their properties lie within the Association's jurisdiction and have received maintenance or security services from the Association, which qualify them for membership. Although we did not strike those declarations or related portions of the combined reply and cross-respondent's brief, we decline to address such a new argument made on appeal about membership.

Appellants, in which no standing issues regarding ownership of covenant property are raised on appeal (pts. V-VI, *post*).[8]

## III

### *ASSOCIATION'S CROSS-APPEAL: OPEN MEETING ACT CLAIMS*

#### A. Golden Eagle's Asserted Grounds for Relief

In its Open Meeting Act statutory cause of action, Golden Eagle incorporated all prior facts pled about the Association's refusal to delay the May 7, 2015 meeting, as alleged contradictions of the Association's own previous assurances that it did not intend to undermine or interfere with Appellants' development efforts with the County. Golden Eagle specifically alleges the Association violated Civil Code section 4930, subdivision (a), by taking action at the May 7, 2015 nonemergency meeting, that went beyond the specified agenda item 5, "Presentation on High Density Housing," or item 6, "Review of 2006 RSFA Planning Committee Study and Board Decision." It asserts that the supporting material distributed with the agenda for item 5 stated that the Board would not be voting to approve or disapprove the project at that meeting, but nevertheless did so, when it wrote to the County. As to item 6, the supporting material stated that even if the current board chose to review previous positions taken by past Association committees and boards (i.e., limiting high density housing to a particular area, not including the

---

[8]    The parties have not disputed the bulk of the evidentiary rulings made by the trial court. However, the Association claims error in the court's ruling that sustained plaintiffs' objections to challenged portions of the Boon declaration (para. 8, regarding whether the agenda was timely distributed; it was arguably a day late). These anti-SLAPP issues do not hinge upon any such claim of error and we need not address it.

location of this project), such a review by the current board "would not be intended to undermine or interfere in any way with the effort of any RSFA member to bring the County's entitlements for a member's property in line with the Covenant."

Golden Eagle thus claimed that contrary to the assurances Appellants received, a vote was taken at the May 7, 2015 meeting to request in writing to the County to continue to adhere to existing general planning standards, requiring one dwelling maximum per two-acre building site. Golden Eagle pleads that the sending of the letter effectively defeated the project and therefore Appellants sustained damages from this alleged Association misconduct in violation of the Open Meeting Act.

### B. Coverage by Statute

The Civil Code provisions that require homeowners association boards to hold open meetings and to allow members to speak publicly at them reflect the Legislature's recognition that such boards possess broad powers to affect large numbers of individuals through their decisions and actions. (Civ. Code, § 4800 et seq.; formerly §§ 1363.05, 1363, 1350-1376; *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 475 (*Damon*).) "These provisions parallel California's open meeting laws regulating government officials, agencies and boards. (Ralph M. Brown Act, Gov. Code, § 54950 et seq. [the Brown Act].) Both statutory schemes mandate open governance meetings, with notice, agenda and minutes requirements, and strictly limit closed executive sessions." (*Damon*, *supra*, at p. 475; see *San Diegans for Open Government v. City of Oceanside* (2016) 4 Cal.App.5th 637, 644-645 [substantial compliance with agenda requirements of the Brown Act found adequate, where the essential nature of the matter to be considered

20

was disclosed in the agency's agenda; "technical errors or immaterial omissions will not prevent an agency from acting"].)

This case presents a close question as to the applicability of anti-SLAPP provisions to the Association's quasi-governmental functions in the context of petitioning activity related to County land use planning. (See *Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 804 (*Wang*) ["no bright line rule exists that all cases involving developments and applications for public permits always involve the type of petitioning conduct protected by the anti-SLAPP statutory scheme"].) In its own appeal, Golden Eagle argues it should be able to vindicate its rights and therefore show entitlement to recover damages, and "[t]his case does not present the typical SLAPP scenario, because Golden Eagle and the Trust brought the lawsuit to allow their own voices to be heard — voices the Association was trying to extinguish." (See *Midland Pacific Building Corp. v. King* (2007) 157 Cal.App.4th 264, 266-267 (*Midland*) [" 'The paradigm SLAPP is a suit filed by a large land developer against environmental activists or a neighborhood association intended to chill the defendants' continued political or legal opposition to developers' plans. Paradigms change. [Citations.]' "].)

In this context of the Association's cross-appeal on the Open Meeting Act cause of action, we are required to consider the Association's function as the recipient of applications when conducting land use planning within the context of its protective covenant. The Association's regulations require it to work collaboratively with the County's processing of separate land use applications, with respect to County requirements under the general plan residential density provisions. Holding open

21

meetings and taking account of various opinions among community members are parts of the Association's job. Its disputed May 11, 2015 letter to County authorities expressed its views that "*at this time*," the Association was requesting that the County "*adhere to and enforce the current County General Plan 2020 land use and zoning for this property . . . .*"

An attorney declaration submitted by the Association attaches petitions signed by 130 residents who oppose the project, and letters from two neighboring homeowners associations which also oppose the project. According to Boon's declaration, the Association has approximately 3,000 owners, who are "very active and interested in upholding the very high architectural standards and rural character of the community." She stated that during 2014-2015, the project generated significant public interest among Association members and the surrounding community, including at public meetings.

Because the Association defines membership in a certain way, involving private ownership of property and payment of assessments pursuant to covenant provisions, it is unclear whether its activities should qualify as "official" governmental actions within the meaning of section 425.16, subdivision (e)(1) and (2). (See *Damon*, *supra*, 85 Cal.App.4th 468, 480 [management of a private homeowners association concerns public "issues of critical importance to a large segment of our local population. 'For many Californians, the homeowners association functions as a second municipal government . . . .' "]; § 425.16, subd. (e)(3) [public forum category].) As observed in *Colyear v. Rolling Hills Community Association of Rancho Palos Verdes* (*Colyear*) (2017) 9 Cal.App.5th 119, 131-132, "several courts have found protected conduct in the

22

context of disputes within the homeowners association," by utilizing the "public interest" category in the statute, section 425.16, subdivision (e)(4) ("any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest").  In *Colyear* at page 130, the court declined to reach the issue of whether the homeowners association's process challenged there, a dispute resolution proceeding, amounted to an "official" proceeding under section 425.16, subdivision (e)(2), and it instead applied the terms of section 425.16, subdivision (e)(4).

Other disputes arising in this factual context have been resolved by use of the "public forum" category in the statute, section 425.16, subdivision (e)(3).  (*Lee v. Silveira* (2016) 6 Cal.App.5th 527, 545 [director defendants' voting at board meetings on construction projects and management contracts were acts in furtherance of free speech in connection with public issue]; also see *id.* at p. 545, fn. 11 [no reliance on § 425.16, subd. (e)(4)]; *Talega, supra,* 225 Cal.App.4th at p. 728 [considering, but rejecting appealability of either § 425.16, subd. (e)(3) or (4)].)  In our case, the Association did not rely at the trial court level on the "public forum" portion of the statute, section 425.16, subdivision (e)(3).  (See *Damon, supra,* 85 Cal.App.4th at pp. 474-480 [comparing § 425.16, subd. (e)(3) & (4) but applying only subd. (e)(3)].)  The better approach here is to avoid reaching the question of the applicability in this case of section 425.16, subdivision (e)(1), (2) or (3), since the terms of section 425.16, subdivision (e)(4), the "catchall category," were litigated below and have broad application.  (See *City of Montebello v. Vasquez, supra*, 1 Cal.5th 409, 429 [conc. and dis. opn., Liu, J.].)  We think

23

it is fair to say that for purposes of interpreting the definition of speech and conduct on "an issue of public interest," as found in section 425.16, subdivision (e)(4), both sides were engaging in acts of "participation in the government entitlement process affecting . . . [p]roperty," as "acts in furtherance of their constitutional rights of speech and petition . . . ." (*South Sutter, LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634, 670.)

In anti-SLAPP analysis, the term " 'public interest' " as found in section 425.16, subdivision (e)(4) includes, "in addition to government matters, ' "private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity." ' [Citations.] '[I]n cases where the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public (a private group, organization, or community), the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging participation in matters of public significance.' " (*Colyear*, *supra*, 9 Cal.App.5th 119, 131; *Ruiz v. Harbor View Community Assn.* (2005) 134 Cal.App.4th 1456, 1468.)

Under *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78, the relevant inquiry is whether the plaintiff is seeking relief based upon an act done in furtherance of the defendant's petitioning or speech rights. We examine the specific acts of the defendant that Golden Eagle identifies as the "injury-producing" acts, and whether the acts fall within the protected category described in section 425.16, subdivision (e)(4). (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1271-1272.) *Baral*, *supra*,

24

1 Cal.5th 376 made it clear that section 425.16, subdivision (b)(1) is to be interpreted in a particular way, by evaluating "claims that are based on the conduct protected by the statute," and whether they are impermissibly asserted as grounds for the requested relief. (*Baral, supra,* at pp. 382, 395.)  Both sets of declarations and the material lodged with them must be considered to understand the chronology and effect of the planning process upon the asserted rights of the parties, but without making credibility determinations or weighing the evidence.  (§ 425.16, subd. (b)(2).)

We reject Golden Eagle's theory that an exception to the protections for *valid* speech or conduct, as defined in section 425.16, subdivision (e), must apply here, due to alleged illegal conduct:  "[S]ection 425.16 cannot be invoked by a defendant whose assertedly protected activity is illegal as a matter of law and, for that reason, not protected by constitutional guarantees of free speech and petition."  (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 317; *City of Montebello v. Vasquez, supra*, 1 Cal.5th at p. 423.)  Golden Eagle claims that the Association acted in an illegal manner, by publishing an inadequate and untimely agenda and allowing the open meeting discussions to exceed the agenda descriptions, and then communicating with the County in a manner harmful to Appellants.  For purposes of the analysis of the first step of an anti-SLAPP motion, "whether a claim arises from protected activity," an issue may arise on whether the challenged conduct was illegal as a matter of law (i.e., conceded by the defendant or conclusively demonstrated by the evidence).  Only then can a defendant's showing of protected activity be defeated in an anti-SLAPP proceeding.  (*Id.* at p. 424; *Flatley, supra*, 39 Cal.4th at pp. 316-318, 320.)

25

This case does not include any concessions by the Association that it acted illegally. Rather, the Association contends it acted in a lawful manner, and the agenda and supporting items were adequately specific. Civil Code section 4155 defines an "item of business" in this context as an action within the authority of the board. It is not possible to determine on this record that the evidence conclusively shows some illegality occurred within the meaning of the Open Meeting Act. (*Flatley, supra*, 39 Cal.4th at pp. 316-318, 320.) The agenda for the meeting set forth issues familiar to Association members and neighbors, and to Appellants, that were matters of "public interest" within the meaning of the anti-SLAPP statute ("private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity"; *Damon*, *supra*, 85 Cal.App.4th at p. 479).[9]

Golden Eagle's allegations arise within the context of its separate and pending application to the County to amend the general plan, which was admittedly submitted prior to making any companion planning application to the Association. We read the allegations in light of the text of the lodged e-mails and the May 11, 2015 letter itself. Importantly, the Association's letter to the County represents that the board voted unanimously at its May 7 meeting "to request that the County adhere to and enforce the

---

[9]    In this anti-SLAPP statutory analysis, we need not base our decision on the Association's references to judicial deference to the discretionary powers of a homeowners association when controlling its open meetings or administering its powers, as expressed in *Lamden v. La Jolla Shores Clubdominium Homeowners Assn.* (1999) 21 Cal.4th 249, 265. (*Dolan-King v. Rancho Santa Fe Assn.* (2000) 81 Cal.App.4th 965, 979 [good faith requirement]; see *SB Liberty, LLC v. Isla Verde Assn., Inc.* (2013) 217 Cal.App.4th 272, 284-285 [association's board had the authority to determine how to conduct its meetings and to prevent a nonmember from participating in meetings].)

current County General Plan 2020 land use and zoning for this property *at this time*." (Italics added.) The letter expresses the view that the County's authorization of land use changes might be premature, since the required Association approval of any specific project plan has not yet been requested or achieved.

At the hearing on the motion, the trial court questioned Appellants' counsel on whether the project still might happen, despite setbacks, and whether the County could still do whatever it wants, and counsel had to agree, but claimed the action had to be filed now to meet the deadlines set forth in the Open Meeting Act. (Civ. Code, § 4955, subd. (a) [one-year limitations period after member's cause of action accrues].) Even accepting the allegation that the Association's May 11, 2015 letter effectively killed the project, its text alone does not appear to exceed the general descriptions of the material discussed at the agenda for the open meeting, and appears to anticipate further proceedings.

We cannot accept Golden Eagle's backup suggestion on appeal that the Association's letter to the County was merely "incidental" to its main claim that Association representatives misled it during the period leading up to the May 7, 2015 meeting, regarding the scope of the anticipated discussions about the items on the agenda, as informational or otherwise. "In order to show that a challenged cause of action is one 'arising from' protected activity, 'the defendant's act underlying the plaintiff's cause of action must itself have been an act in furtherance of the right of petition or free speech. [Citation.]' . . . [W]hen the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral

27

allusions to protected activity should not subject the cause of action to the anti-SLAPP statute."  (*Schwarzburd v. Kensington Police Protection & Community Services Dist. Bd.* (2014) 225 Cal.App.4th 1345, 1353 (*Schwarzburd*), quoting *Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188.)

Here, however, the allegations in the Open Meeting Act cause of action describe a sequence of intertwined events leading up to the meeting and postdating the meeting, all within the scope of authority of the board in setting meetings on various topics relevant to community governance, and hearing from proponents and opponents of projects.  The pleading cannot reasonably be read as severing out the arguably protected letter to the County as "incidental" or "collateral" in nature.  Because Golden Eagle and the Association were not involved in a private transactional relationship, this case is distinguishable from the scenario of *Wang*, *supra*, 153 Cal.App.4th 790, where the anti-SLAPP statute did not apply, and where "[t]he overall thrust of the complaint challenges the manner in which the parties privately dealt with one another, on both contractual and tort theories, and does not principally challenge the collateral activity of pursuing governmental approvals."  (*Id.* at p. 809.)

In contrast, Golden Eagle's entire claim arises out of the Association's activities in conducting business within its sphere of influence, concerning property entitlements which are matters of "public interest" under section 425.16, subdivision (e)(4).  (See *Damon, supra,* 85 Cal.App.4th at p. 474 [referencing both § 425.16, subd. (e)(3) & (4)].) "[P]rivate conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity" can amount to conduct

28

affecting the public interest within anti-SLAPP definitions. (*Damon*, *supra*, 85 Cal.App.4th at p. 479.) Golden Eagle cannot point to any portion of its pleading that supports a conclusion that any allegedly misleading Association conduct was severable from that public interest context of protected petitioning conduct or speech. (See *South Sutter, LLC v. LJ Sutter Partners, L.P., supra,* 193 Cal.App.4th 634, 670.)

### C. Probability of Prevailing: Not Reached by Trial Court

On this cause of action, the trial court ruled only on prong one, erroneously finding coverage by the statute did not exist solely under section 425.16, subdivision (e)(1) or (2). We have found statutory coverage under section 425.16, subdivision (e)(4). Although we could remand the matter to the trial court to conduct the second prong analysis for this particular claim, we are free in this de novo review to consider the showings made on the second prong of the test, Golden Eagle's ability on this record to demonstrate its probability of prevailing. (*Schwarzburd*, *supra*, 225 Cal.App.4th 1345, 1355.) During the trial court proceedings, the parties had the opportunity to create a record adequate on the standing issue. In a judicial notice request made (and granted) in surreply to the underlying motion to strike, the Trust was able to show that it owned property within the Association's jurisdiction. The only named plaintiff in the Open Meeting Act claim was Golden Eagle, which pleads that it owns only the noncovenant portion of the property, and would need to seek annexation to achieve membership status. We have previously rejected the parties' efforts to resolve factual matters about Association membership, by denying an earlier judicial notice application on appeal.

29

From the outset of the litigation, an essential element of Golden Eagle's case as a plaintiff was the ability to allege and prove its standing to sue. (*Sanchez v. City of Modesto* (2006) 145 Cal.App.4th 660, 671-672 [standing defects can be raised at any time]; § 367 [real party in interest may sue].) It attempted to do so by providing the Smith declaration to the trial court, asserting that Golden Eagle was unfairly treated "differently than other Association members." That begged the question of whether Golden Eagle was such a member, eligible to assert the rights guaranteed by the Open Meeting Act. Civil Code section 4955 authorizes a member of an association to bring a civil action for certain limited remedies to redress alleged violations of the Open Meeting Act. The record contains the Association's bylaws, stating that membership in good standing requires ownership of building sites subject to the Association's covenant, with payment of assessments.

Golden Eagle complains on appeal that the Association did not start to attack its standing to sue until its reply papers and argument at the trial court hearing, that there was no evidence in the record about Golden Eagle's ownership of covenant controlled parcels. But where a jurisdictional standing defect is evident on the record for this Association based claim, de novo review can accommodate it without attention to waiver or forfeiture claims about late reply arguments. Golden Eagle cannot rely only on the pleadings to prevail on a claim that is statutorily limited to members of an association for alleging Open Meeting Act violations. (Civ. Code, § 4955, subd. (a); *HMS Capital Inc.*, *supra*, 118 Cal.App.4th 204, 212.)

30

Moreover, Golden Eagle appears to be claiming that the Open Meeting Act standards for specificity of agenda items are more stringent than the statutes actually provide. Under Civil Code section 4930, subdivision (a), "the board may not discuss or take action on any item at a nonemergency meeting unless the item was placed on the agenda included in the notice that was distributed pursuant to subdivision (a) of Section 4920." Civil Code section 4920, subdivisions (a) and (d) require that the Association give timely notice of the time and place of a board meeting and supply the agenda for the meeting. Civil Code section 4155 defines an "item of business" in this context as an action within the authority of the board. Golden Eagle has not shown these statutes required that its project be mentioned by name, when the agenda and supporting items identified the relevant issues, which had been debated in the community since at least 2006, as referenced in the supporting material. It does not show a probability of prevailing on this claim, and we will direct upon remand that this cause of action be stricken.

IV

*APPEAL BY GOLDEN EAGLE ALONE: OTHER ASSOCIATION-BASED CLAIMS*

A. Allegations

We turn to Golden Eagle's other "Association-based" claims, concerning alleged breaches of fiduciary duty, Association bylaws, and/or its covenant of good faith and fair dealing with its members. These theories are not alleged by the Trust. We are instructed by *Baral*, *supra*, 1 Cal.5th 376 to avoid analyzing each cause of action only on form or

31

primary rights theory, and rather must focus on whether the plaintiff is asserting "claims that are based on the conduct protected by the statute." (*Id.* at p. 382.)

In both the second cause of action (breach of fiduciary duties) and the eighth cause of action (implied covenant of good faith and fair dealing), Golden Eagle realleges the list of eight actions by the Association placed in its general allegations, and contends they represented bad faith opposition to the project in both the Association and County forums. Golden Eagle relies on the Association's letters, e-mails, and meetings, as showing adversarial treatment designed to undermine and interfere with the project. This was allegedly a failure "to act as a reasonably careful and prudent fiduciary would have acted under the same or similar circumstances." It was also pled to be an unfair interference with Golden Eagle's "right to receive the benefits of RSFA's governing documents, and the Bylaws, by engaging in the wrongful conduct as alleged herein."

In the ninth cause of action, Golden Eagle alleges that the Association's noncompliance with the Open Meeting Act amounted to a breach of its bylaws, because the bylaws incorporate by reference the Davis-Stirling Common Interest Development Act (Civ. Code, § 4000 et seq.) , including its open meetings provisions. In particular, Golden Eagle claims it was a violation of Civil Code section 4930, subdivision (a) to discuss its project, vote, and send the County the May 11, 2015 letter, when the May 7, 2015 meeting was not designated as an emergency meeting, and when the supporting materials for the agenda had stated, "the Board will not be voting to approve or disapprove this particular project." The wrongful acts alleged about the letter to the County were its confirmation that "no approval has been granted" regarding the proposed

32

project, and its request that the County adhere to and enforce the County's General Plan 2020 that states "one dwelling maximum per two acre site." Golden Eagle thus claims:

> "This action/vote was not identified on the May 7, 2015 Agenda as a possible action item and it constituted a direct vote of disapproval of Plaintiff's proposed age-restricted housing project, which RSFA knew required more than one dwelling per two acre site. The RSFA misconduct and violation of the Act effectively defeated Plaintiff's project and any chance of Plaintiff obtaining a general plan amendment and major use permit as Plaintiff had previously applied for and expended over one million, six hundred thousand dollars to obtain."

## B. Coverage by Statute

Golden Eagle concedes that this litigation may have been triggered by the Association's action in sending the May 11, 2015 letter to the County, but contends that the trial court erred in ruling that each claim arises from protected petitioning conduct. (See *Cotati*, *supra*, 29 Cal.4th at p. 78 ["[t]hat a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such."]) Instead, Golden Eagle contends the trial court erred in failing to acknowledge that the claims about alleged breaches of the governing documents (bylaws and their inherent covenant of good faith and fair dealing toward members), are centered around the alleged violations of the Open Meeting Act, such that those violations could not be considered to be protected conduct. Likewise, the fiduciary duty claim is arguably based on "illegal" voting conduct, which, in Smith's declaration, is characterized as failing to follow the legal process and breaching the "fiduciary duty to treat all members equally and fairly."

Alternatively, Golden Eagle argues that its breach of covenant claim is based on how the Association dealt with it, said to be in a manner contrary to duties owed under

33

the governing documents, such that the letter to the County is merely collateral to the central allegations of violation of the bylaws. (*Wang*, *supra*, 153 Cal.App.4th 790, 809; *Midland, supra*, 157 Cal.App.4th 264, 271-275 [breach of contract theory directly based on the defendants' appearances at a public hearing and thus fell within scope of statute].) Reading this cause of action in context, the argument is unpersuasive. The critical issue is "whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech. [Citation.] . . . We look to the gravamen of the plaintiff's cause of action to determine whether the anti-SLAPP statute applies." (*Schwarzburd*, *supra*, 225 Cal.App.4th 1345, 1353.)

We conclude these three causes of action brought by Golden Eagle alone are each "claims that are based on the conduct protected by the statute." (*Baral, supra,* 1 Cal.5th at p. 382.) Golden Eagle cannot seek remedies based on the Association's protected conduct of sending letters, e-mails, and setting agendas and conducting meetings, all in administering its covenant responsibilities in collaboration with the County's planning activities. These qualify as matters of public interest as defined in section 425.16, subdivision (e)(4).

### C. Probability of Prevailing: Standing

To the extent that Golden Eagle again argues that it was too late for the Association to object to a lack of standing to sue as a member of the Association, in its reply papers and at argument on the motion, we reject this claim. Standing is an issue of law that can be resolved at any appropriate point in the proceedings. (*Sanchez*, *supra*, 145 Cal.App.4th 660, 671-672.)

34

Golden Eagle contends it can appropriately pursue its fiduciary duty claim, because it was not treated the same as other Association members, as recounted in the declaration from Smith. It relies entirely on that declaration to suggest that it was deprived of an opportunity to be heard, therefore duties owed to it were breached and it may be able to obtain remedies for them. (E.g., Civ. Code, § 5975, subd. (c) [award of attorney fees may be available in disputes about enforcement of governing documents].) These arguments are premised on the belief that Golden Eagle qualifies for Association membership, but Smith's declaration of opinion is not dispositive. The bylaws in the record prescribed qualifications that have not objectively been shown to have been met (ownership of a building site in Association jurisdiction, with payment of assessments to be a member in good standing).

Generally, fiduciary duties owed by a homeowner association to its members are limited to those arising from its governing documents and relevant statutory requirements. (*Ostayan v. Nordhoff Townhomes Homeowners Assn., Inc*. (2003) 110 Cal.App.4th 120, 129.) As the sole plaintiff for this cause of action, Golden Eagle cannot show it is entitled to enforce a fiduciary relationship arising out of contract or from another relationship imposing one as a matter of law. (*Kovich v. Paseo Del Mar Homeowners' Assn.* (1996) 41 Cal.App.4th 863, 867.)

Golden Eagle strives to enforce a contractual obligation arising out of the Association's governing documents, through its claim for breach of the implied covenant of good faith and fair dealing. Generally, "[t]here is no obligation to deal fairly or in good faith absent an existing contract. [Citations.] If there exists a contractual

35

relationship between the parties . . . the implied covenant is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contract." (*Racine & Laramie, Ltd. v. Department of Parks & Recreation* (1992) 11 Cal.App.4th 1026, 1032.) Golden Eagle cannot rely only on its pleadings. (*HMS Capital, Inc.*, *supra*, 118 Cal.App.4th 204, 212.) As a proposed developer, Golden Eagle cannot show on this record, as a matter of law, it has standing to assert any of these Association-based causes of action that are based on the governing documents, such as the bylaws provisions.

The trial court's ruling went on to address the issue of Golden Eagle's failure to show its probability of prevailing, with respect to bringing forward evidence to demonstrate it has a potential entitlement to damages. We agree with the trial court that the record does not support a conclusion that Golden Eagle can probably or possibly recover damages (e.g., its lost investment or lost profits) that are directly attributable to these alleged breaches by the Association of fiduciary duties, governing documents or bylaws provisions.

V

*APPEAL BY GOLDEN EAGLE AND THE TRUST: FRAUD-BASED CLAIMS*

A. Allegations

We next examine the claims common to both Appellants, as to the fraud-based theories (false promise, negligent misrepresentation or promissory estoppel). No standing issues regarding required ownership of covenant property are raised on appeal on these causes of action (nor on the business interference claims; pt. VI, *post*).

Appellants' third cause of action incorporates all prior allegations and adds a theory of false promise by the Association's president, that it would not undermine or interfere in any way with the applications for entitlements being made by Appellants to the County. The same representations are alleged to have been negligent, or to have created a form of promissory estoppel (4th & 5th causes of action). As to all three claims, Appellants seek damages for the amounts spent in preparing the project, and lost profits, alleging that the misrepresentations amounted to intentional or negligent actions that undermined and interfered with their efforts to obtain approvals and entitlements from the County.

In Boswell's declaration in opposition to the motion to strike, she states that she relied upon these assurances in choosing not to attend the informational meeting.

### B. Coverage by Statute

On appeal, Appellants disclaim reliance on the letter to the County, characterizing it as a collateral allusion to protected activity, which may be "incidental" to the claim about the alleged separate false promises to abide by the Open Meeting Act. (*Freeman v. Schack*, *supra*, 154 Cal.App.4th 719, 727.) They rely on *Midland*, in which a fraud pleading was held not to be subject to the anti-SLAPP statute, because the allegations in support of fraud were incidental to the defendants' exercise of free speech and petition, and did not arise from protected activity. (*Midland, supra*, 157 Cal.App.4th 264, 267, 271-276 [no bar of § 425.16 to a developer's claim that sought to "vindicate a 'legally cognizable right' " to be free from fraud during a transaction; however, breach of contract

37

allegations, based on the defendants' appearances at a public hearing, did arise from protected activity].)

Appellants contend that the trial court erred in ruling that these fraud-based claims arise from protected petitioning conduct, because they have alleged a separate false promise in the April 30, 2015 e-mail from the Association's president, that it would not interfere with Appellants' pursuit of the project, at the May 7, 2015 Board meeting. They contend the fraud claims are centered around alleged violations of the Open Meeting Act, such that no relief is being sought for protected conduct.

We disagree with Appellants that they can selectively read their own pleading to delete out protected conduct by the Association. As already explained in our discussion of the Open Meeting Act ruling, in no way can the May 11, 2015 letter to the County be considered to be an incidental or collateral part of the fraud claims. (*Midland, supra*, 157 Cal.App.4th at pp. 275-276; *Wang, supra,* 153 Cal.App.4th at p. 809.) All the communications that are sued upon took place within the Board's authorized activities to set meetings and agendas on various topics relevant to community governance, and to hear from proponents and opponents of projects. The fraud-related claims also arise out of the Association's activity in conducting its usual business pertaining to its region of influence, concerning property entitlements which are matters of "public interest" under broad anti-SLAPP definitions. (*Damon, supra*, 85 Cal.App.4th at pp. 474, 477, 479.) Appellants cannot seek relief based on these allegations of protected conduct.

## C. Probability of Prevailing: Lack of Damages Showing

" ' "The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or ' "scienter" '); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." ' " (*Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1059-1060.) Each such element must be alleged with particularity. (*Ibid.*)

The trial court's ruling found that Appellants had adequately pled the elements of representations made to them, and their reliance upon them. The court determined, however, that Appellants had failed to establish they were damaged through those representations. This was a correct approach. The evidence does not show that the representatives of Golden Eagle and the Trust were directly induced, through the "assurances" given to them, to alter their positions in pursuing the project, to their injury. (Civ. Code, §§ 1709, 1710 [defining deceit as including promise made without any intention of performing it].) They were supplied with the agenda and supporting materials, which included a history of a previous application for a similar project. (*Damon, supra*, 85 Cal.App.4th at p. 475 [Open Meeting Act protections are similar to the Brown Act, but more specific to homeowners associations].) Consistent with the requirements of Civil Code section 4930, they were placed on notice of the essential nature of the items that the board would be considering. (*San Diegans for Open Government v. City of Oceanside*, *supra*, 4 Cal.App.5th 637, 644-645 [immaterial omissions from agenda do not prevent an agency from acting, if essential nature of the matter to be considered was disclosed].) They had attended other such meetings, were

39

aware of the controversy surrounding their project, and nothing the Association did precluded them from attending this one, even allowing for some reliance on the assurances given to them.

Even if we accept the allegations that Appellants' project may have been effectively derailed, we cannot conclude that their reliance on a single communication among many, over a long period of time, was justifiable reliance. They have not produced evidence supporting their theory that the economic loss pleaded was the result of their reliance on Boon's assurances. The trial court correctly determined Appellants failed to establish that they were damaged by the Association's representations.

VI

*APPEAL BY GOLDEN EAGLE AND THE TRUST: BUSINESS INTERFERENCE CAUSES OF ACTION*

A. Allegations

We next examine the economic injury claims brought by both Appellants, regarding intentional or negligent interference with economic advantage.[10] They plead that the Association's conduct, through violations of the Open Meeting Act, disrupted their relationships with various third parties regarding the project, both intentionally and negligently. Such wrongful conduct allegedly included the previous, incorporated allegations of violation of fiduciary duties and false promises, all in the course of holding

---

[10] We reiterate that no standing issues regarding ownership of covenant property are raised on appeal for these claims.

40

Association meetings and communicating about the project to the County, the community and Appellants, but failing to mention this project by name in the agenda.

In their opposition papers to the motion, Appellants identify their own design and consulting professionals (Smith and Shapouri) as the third parties with whom they wish to continue to have economic relationships, apparently by retaining them to process further applications for the project.

### B.  Coverage by Statute; Lack of Showing of Disruption

"The tort of intentional or negligent interference with prospective economic advantage imposes liability for improper methods of disrupting or diverting the business relationship of another which fall outside the boundaries of fair competition." (*Settimo Associates v. Environ Systems, Inc.* (1993) 14 Cal.App.4th 842, 845.)  For intentional interference, the plaintiff must plead and prove:  " ' "(1) an economic relationship between the plaintiff and some third party, *with the probability of future economic benefit to the plaintiff*; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship." ' "  (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153 (*Korea Supply*); italics added.)  With respect to the type of intentional disruptive acts that are actionable, they must be wrongful by some independent legal measure, beyond interference.  (*Ibid.*)

Next, an intentional interference claim requires setting forth facts of " ' "(4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." ' "  (*Korea Supply, supra*, 29 Cal.4th at p. 1153.)  A proximate cause showing is required for a plaintiff to recover for harm that is closely

41

connected to the defendant's alleged wrongful conduct. (*Id.* at pp. 1165-1166; *San Jose Construction, Inc. v. S.B.C.C., Inc*. (2007) 155 Cal.App.4th 1528, 1544-1545 ["it is sufficient for the plaintiff to plead that the defendant ' "[knew] that the interference is certain or substantially certain to occur as a result of his action" ' "].)

When negligent, yet disruptive, acts allegedly interfere with an economic relationship, the acts are deemed tortious only where there was an existing duty of care owed by the defendant to the plaintiff. (*Limandri v. Judkins* (1997) 52 Cal.App.4th 326, 348.)

In its ruling, the Court simply stated that the anti-SLAPP statutory scheme applied to these causes of action, and further, after carefully reviewing the evidence submitted by Appellants, it had found they did not meet their burden of establishing their relationships with third parties that were disrupted by the Association's conduct.

Appellants contend that these business interference claims could not have arisen from protected petitioning conduct, because the alleged violations of the Open Meeting Act are central to the claims, and such violations should not be considered to be protected conduct. We are required to determine whether these two claims "are based on the conduct protected by the statute." (*Baral, supra,* 1 Cal.5th at p. 382.) We conclude that it is precisely such allegations of protected activity that Appellants assert as the grounds for their requested relief. (*Id.* at p. 395.) These claims are unavoidably grounded in communicating and petitioning activities, which fall within the scope of protected petitioning conduct and speech on issues of public interest. (§ 425.16, subd. (e)(4).)

We are unable to conclude that Appellants established a probability of prevailing on these claims, where the only identified third parties are their own consultants. The Association is not known to be competing with Appellants to retain Smith or Shapouri, to Appellants' exclusion. (*Settimo Associates v. Environ Systems, Inc.*, *supra*, 14 Cal.App.4th 842, 845.) Disruption of those professional relationships, when Appellants are the clients who want to keep paying all the bills, does not support the claims of damage to Appellants. The complaint seeks unspecified lost profits, but it is speculative whether this project will ever come to fruition and whether potential buyers would have created such profits for Appellants. Reliance on the pleadings is not enough to demonstrate a probability of prevailing. (*HMS Capital, Inc.*, *supra*, 118 Cal.App.4th at p. 212.)

Finally, Appellants have established no entitlement to seek leave to amend upon remand, to replead mixed causes of action pursuant to the theory of *Baral, supra*, 1 Cal.5th 376, 395-396. Since the trial court's ruling was not entirely favorable to either party, and it did not make any award of attorney fees, we remand the matter for further appropriate proceedings in which any appropriate application for attorney fees may be brought and considered in the first instance. (§ 425.16, subd. (c).)

## DISPOSITION

The order is reversed in part as to the Open Meeting Act cause of action with directions to grant the motion to strike, and affirmed as to the balance of the order. On

43

remand, the trial court shall allow any appropriate further proceedings concerning attorney fees that may be sought.  Costs on appeal to the Association.

HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


O'ROURKE, J.