Filed 2/17/21  Flores v. Sharp Grossmont Hospital CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| EDUARDO FLORES,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>SHARP GROSSMONT HOSPITAL,<br><br>Defendant and Respondent. | D076786<br><br><br>(Super. Ct. No. 37-2016-00039735-CU-MM-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Affirmed.

Eduard Flores, in pro. per., for Plaintiff and Appellant.

Lotz, Doggett & Rawers, Jeffrey S. Doggett and Patrick F. Higle for Defendant and Respondent.

Eduardo Flores sued Sharp Grossmont Hospital (Sharp) in 2016 seeking to recover for injuries suffered during a 2014 surgery.  In a prior appeal, we reversed a judgment dismissing the action based on the statute of limitations.  (*Flores v. Sharp Grossmont Hospital* (Oct. 31, 2018, D071993) [nonpub. opn.] (*Flores I*).)  We determined Flores met his appellate burden to

show a reasonable possibility he could amend his complaint on his medical malpractice claim to establish the limitations period was tolled during his claimed incapacity. (*Ibid.*; see Code Civ. Proc., §352, subd. (a).)[1]

In reversing, we gave specific directions that to satisfy his pleading burden on the medical malpractice claim, Flores must allege facts (1) specifying the nature of Sharp's alleged wrongdoing and breach of duty owed to him; (2) describing the nature of his claimed incapacity and the time period he claims he was incapacitated; and (3) showing his claim was timely under applicable tolling principles. (*Flores I, supra,* D071993.)

On remand, the court twice gave Flores leave to amend his complaint, and ultimately sustained Sharp's demurrer to Flores's fourth amended complaint without leave to amend. Flores appeals. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Prior Proceedings*

In his original and first amended complaints against Sharp, Flores (representing himself) asserted a medical malpractice cause of action, and a separate cause of action for wrongful denial of access to his medical records.

Flores alleged that in 2008, he was examined at Sharp for cardiac issues. In 2014, he was scheduled to have brain surgery. Before the surgery, he went to the San Diego Cardiac Center for an evaluation. He told the cardiologist (Dr. Hoagland) "that Sharp . . . had the results of [cardiac tests] that had been done in 2008." These records were allegedly not found or examined. Because of the alleged failure to obtain and examine these records, Flores was "diagnosed with low risk of cardiac complications." However, during the surgery performed on June 9, 2014, Flores suffered

---

[1] All unspecified statutory references are to the Code of Civil Procedure.

2

serious complications allegedly because of his cardiac problems. Flores sought recovery from Sharp for the injuries resulting from the 2014 surgery complications.

Sharp moved for judgment on the pleadings, solely on the ground that the amended complaint was untimely under the one-year limitations period applicable to medical malpractice claims. (§ 340.5.) Sharp maintained the cause of action accrued no later than Flores's surgery date (June 9, 2014) because he alleged that during this surgery, he suffered serious complications allegedly resulting from Sharp's wrongful actions. Sharp thus argued Flores had one year from June 2014 to file his medical malpractice claim, and by waiting more than two years (to November 2016), Flores did not timely file his lawsuit.

In opposing the motion, Flores attempted to clarify his malpractice claim against Sharp, and also said that in " '2014, 2015 and half 2016, I lost my memory, and I was in recuperation therapy.' " He said that in early December 2016, he went to Sharp to obtain a copy of his medical records, but the hospital refused to provide him with his records. Flores said he was seeking to " 'find out the truth' " with respect to what happened to him in 2008 regarding his heart condition.

In reply, Sharp noted it was difficult to discern the precise nature of the alleged professional negligence. But Sharp argued that even assuming Flores had alleged a valid malpractice claim against Sharp, the complaint—filed more than 29 months after his June 2014 surgery—was untimely under section 340.5's one-year limitations period.

The trial court granted Sharp's motion for judgment on the pleadings, finding the medical malpractice claim accrued no later than June 9, 2014, when Flores allegedly "underwent the surgical procedure due to

Sharp's . . . diagnosis that he 'was on low risk for cardiac complications' which was [allegedly] 'wrong' " and thus "the complaint . . . filed more than 2 years later" was untimely. (*Flores I, supra,* D071993.)

On Flores's cause of action for failure to "access" his medical records, the court stated Flores "provides no authority this is a legally cognizable claim," and "[d]efense counsel, who represents only physicians, hospitals and medical groups, assures the court there is no such legal claim." (*Flores I, supra,* D071993.)

The court denied Flores's request for leave to amend on both causes of action. The court also granted Sharp's motion to quash Flores's deposition subpoenas.

*First Appeal*

In his first appeal, Flores (representing himself) argued his professional negligence claim was timely and, alternatively, he should be permitted to amend to show grounds for extending the limitations period.

We first held the trial court properly found the claim—as alleged—was time barred under section 340.5. (*Flores I, supra,* D071993.) We explained that Flores alleged Sharp (or its agents) "committed professional negligence by failing to accurately diagnose his heart condition (or provide the appropriate documents to Dr. Hoagland to permit a proper diagnosis)" and that he suffered injuries (in the form of serious complications) during neurosurgery in June 2014, and thus his November 2016 complaint was untimely. (*Ibid.*)

But we found Flores should be provided an opportunity to amend his malpractice claim to allege facts to overcome the statute of limitations defense based on a statutory tolling rule applicable during a person's

4

incapacity.  (*Flores I, supra,* D071993; see § 352, subd. (a).)[2]  In reaching this conclusion, we analyzed whether this tolling rule applies to medical malpractice actions, and we concluded it does.  (*Flores I, supra,* D071993.)  We defined "incapacity" in this context to mean a person is " 'incapable of caring for his [or her] property or transacting business or understanding the nature or effects of his [or her] acts . . . .' "  (*Ibid.*)

Based on Flores's representations on appeal and in the court below that he may be able to allege facts showing he was incapacitated from 2014 through 2016, we reversed the judgment.  (*Flores I, supra,* D071993.)  We stated:  "[Flores] claims the surgery left him incompetent without basic physical or cognitive skills through the middle or end of 2016.  If Flores can in good faith allege specific facts showing his condition precluded him from caring for his property and transacting business affairs, and/or understanding the nature of his acts, until he filed his complaint, he may be able to avoid a dismissal at the pleading stage."  (*Ibid.*)

We thus remanded to provide Flores with the opportunity to allege facts showing his medical malpractice claim was tolled under section 352, subdivision (a).  In so doing, we stated: "For purposes of guidance on remand, we recognize Flores's pleadings and written submissions are unclear as to the precise conduct by Sharp that is alleged to be negligent, particularly whether the alleged negligence occurred in 2008 or 2014 or 2016, and when Flores allegedly suffered injury from this negligence.  Thus, to satisfy his pleading burden on remand, Flores has the obligation to additionally allege the specific

---

2      Section 352, subdivision (a) states: "If a person . . . is, at the time the cause of action accrued . . . lacking the legal capacity to make decisions, the time of the disability is not part of the time limited for the commencement of the action."

wrongdoing allegedly committed by Sharp and when Flores was allegedly injured by this wrongdoing." (*Flores I, supra,* D071993.)

We then reached and resolved three additional contentions raised by Flores.

First, we rejected Flores's argument that he should be permitted to amend his malpractice claim to alternatively allege that the statute of limitations was tolled by Sharp's "fraudulent concealment of [his] medical records." (*Flores I, supra,* D071993.) Based on Flores's admissions, we determined this theory was not a valid independent ground *for tolling section 340.5's limitations period.* We thus concluded that "although Flores has met his appellate burden to establish a basis for an amendment for tolling on an incompetency theory, he did not meet this burden on a fraudulent-concealment theory." (*Flores I, supra,* D071993*.)*

Second, with respect to Flores's cause of action for Sharp's failure to provide him access to his medical records, we noted the trial court made a specific finding that this claim did not state a viable cause of action under California law. (*Flores I, supra,* D071993.) After considering the issue, we determined Flores forfeited any objection to this ruling by failing to "specifically challenge this ruling on appeal and/or provide any factual or legal basis supporting this cause of action." (*Ibid.*) We thus held there was "no error in the court's conclusion" pertaining to this cause of action. (*Ibid.*)

Third, we rejected Flores's challenges to the court's rulings granting Sharp's motion to quash his deposition subpoenas. (*Flores I, supra,* D071993.) We found his challenges to "be without merit." (*Ibid.*)

In our Disposition section, we stated: "The court is ordered to vacate the order and judgment granting Sharp's motion for judgment on the pleadings, and to enter a new order allowing Flores to amend the complaint

6

to add a tolling theory based on his claimed incompetency under . . . section 352 and to allege facts identifying Sharp's alleged wrongdoing and when he was allegedly injured by this wrongdoing." (*Flores I, supra,* D071993.)

*Proceedings On Remand*

After remand, Flores first filed a third amended complaint that was confusing and difficult to understand. He attached numerous exhibits pertaining mainly to his contacts with Sharp and his consultation with Dr. Hoagland. Sharp demurred to the complaint. Instead of responding, Flores moved to file a fourth amended complaint. The court granted the motion.

The fourth amended complaint alleged similar foundational facts but with more clarity and specificity (and without any attachments). This pleading alleged that on June 25, 2008, Flores went to Kaiser Permanente for treatment for chest pains. He was then transported via ambulance to Sharp where Dr. Marc Kobernick[3] performed an electrocardiogram and cardiac catheterization. An unidentified medical professional came into his hospital room and told him he "could die at any moment" and "was about to have open heart surgery." Flores refused to sign the consent form. Shortly after, Flores was transferred to Kaiser hospital without his consent.

Three years later, in September 2011, Flores suffered a brain injury. After many neurological consultations, his surgery was scheduled for 2014. He was referred to Dr. Hoagland, a cardiologist at San Diego Cardiac Center, for cardiac surgical clearance.

Flores saw Dr. Hoagland on February 28, 2014. Dr. Hoagland requested all medical records pertaining to Flores's cardiac history from

---

[3] Although Flores spells Dr. Kobernick's name with a C, the record shows it is spelled with a K (Dr. Kobernick). Dr. Kobernick was named in the complaint, but was never served.

7

Sharp, but was allegedly unable to obtain any records. Flores also requested records, but did not receive any documents. Dr. Hoagland found there was "no definitive history" of cardiac disease allegedly "based on [Sharp's] representation that Plaintiff had no medical record of cardiac evaluation, testing, diagnosis, or treatment at [its] facility."

On April 25, 2014, Dr. Hoagland "gave preoperative cardiac clearance without full benefit and knowledge of [his] prior treatment and history received while under the care and custody of Sharp . . . in June 2008 due to [its] failure to provide a complete set of treatment records."

Flores alleged he "had brain surgery without a proper preoperative evaluation because his full medical history was not made available for review," resulting in "numerous complications," including "a stroke, respiratory failure, shunt implant, extended hospital stay, pain, rehabilitation, seven additional surgeries and ongoing medical problems." As to tolling, he alleged he "lacked the legal capacity to make decisions from June 9, 2014 to on or about November 16, 2016, as [he] was receiving medical treatment including but not limited to multiple brain surgeries, a shunt implant for his brain, decompression for his brain and many other procedures."

Based on these alleged facts, Flores asserted three causes of action.

First, he alleged professional negligence based on his allegation that Sharp had a duty to "keep accurate medical records" of his "stay, diagnosis, and treatment at the hospital pursuant to 22 CCR § 72543," and Sharp allegedly breached this duty by not "keeping an accurate medical record of [his] cardiac evaluation, testing, diagnosis or treatment." He alleged Sharp breached its duty when it "refused to provide Plaintiff or other authorized medical professional with [his] medical records pursuant to the records

8

retention period outlined in 22 CCR § 72543." He alleged that as a result of Sharp's failure to provide these medical records, he suffered surgery complications in 2014.

Second, he alleged a cause of action for intentional misrepresentation. He claimed Sharp falsely represented it "had no medical records" pertaining to his prior heart attack and/or its treatment of his cardiac problems in 2008; Sharp intended that he or his agent rely on this representation; medical professionals relied on this representation; and he was "harmed when he proceeded with" the neurosurgery in 2014, and thereby suffered serious complications.

Third, Flores alleged negligence pertaining to the competency and licensure of Sharp's physicians and hospital staff pertaining to his treatment and its medical records policies and practices. He alleged Sharp breached its duties owed to him when it "negligently selected, retained, and/or allowed to practice at their facility, health care practitioners who were improperly trained and/or otherwise not competent to care for its patients or maintain medical records in accordance with the provisions of 22 CCR § 72543. These practitioners include . . . Dr. [K]obernick . . . ."

Sharp demurred to the complaint.

On the first cause of action, Sharp argued (1) Flores failed to identify a duty requiring it to provide and maintain medical records, noting Flores's cited regulation applies only to skilled nursing facilities (Cal. Code Regs., tit. 22, § 72543); (2) the claim is "vague and uncertain"; and (3) Flores's "previous cause of action for failure to access medical records has already been adjudicated by the trial court and upheld on appeal by the [Court of Appeal]" and therefore "repeating these allegations . . . is improper."

9

On the second cause of action, Sharp argued the intentional misrepresentation claim was barred by the collateral estoppel doctrine because the *Flores I* court found Flores did not meet his burden on a fraudulent concealment medical malpractice tolling theory.

On the third cause of action, Sharp argued: (1) Sharp does not employ Dr. Kobernick, and is not legally permitted to employ physicians; (2) Flores cited only to the regulation applicable to skilled nursing facilities; and (3) Flores's "previous cause of action for failure to access medical records has already been adjudicated by the trial court and upheld on appeal by the Court of Appeal."

In opposition, Flores asserted he adequately alleged facts identifying Sharp's alleged wrongdoing and the basis for tolling. Regarding Sharp's duty owed to him, Flores said he cited to the "wrong section number of Title 22" and can amend his complaint to cite another regulatory section (Cal. Code Regs., tit. 22, § 70749), which governs recordkeeping requirements applicable to acute care hospitals such as Sharp. He also said he could amend his complaint to allege Sharp owes a duty for the conduct of Dr. Kobernick and Dr. Hoagland because they are "considered" Sharp doctors and have privileges at Sharp.

After a hearing, the court sustained the demurrer without leave to amend. The court found Flores failed to state a claim under his first and third causes of action because he did not identify a viable theory for showing that Sharp can be held liable for medical malpractice and, alternatively, he failed to plead specific facts showing his "lack of legal capacity precluded him from caring for his property and transacting business affairs, and/or understanding the nature of his acts . . . ."

10

On his second cause of action for intentional misrepresentation, the court stated Flores "was not granted permission by the Court o[f] Appeal or this court to plead a count for intentional misrepresentation . . . .  Also, the Court of Appeal held plaintiff did not meet his burden for an amendment on a fraudulent-concealment theory."

The court denied Flores's request for leave to amend his complaint, stating: "[I]t is ordinarily an abuse of discretion to deny [this request] unless the inability to state a valid cause of action is clear. . . .  [Flores] has the burden to show in what manner he can amend the amended complaint and how the amendment will change the legal effect of the pleading. . . .  [Flores] makes no effort to comply with this requirement.  He has had several pleading opportunities."

DISCUSSION

I. *Review Standards*

A demurrer tests the sufficiency of a pleading as a matter of law.  In reviewing an order sustaining a demurrer, we examine the complaint independently to determine whether it alleges facts stating a cause of action on any legal theory.  (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1230.)  "We 'adopt[ ] a liberal construction of the pleading and draw[ ] all reasonable inferences in favor of the asserted claims.' [Citation.]  We are not bound by the trial court's reasoning and may affirm the judgment if correct on any theory." (*Robertson v. Saadat* (2020) 48 Cal.App.5th 630, 639.)

"We review the trial court's refusal to grant leave to amend under the abuse of discretion standard." (*Villafana v. County of San Diego* (2020) 57 Cal.App.5th 1012, 1017.)  The court abuses its discretion if there is a reasonable possibility an amendment would cure the defects.  (*Minnick v. Automotive Creations, Inc.* (2017) 13 Cal.App.5th 1000, 1004.)  The appellant

11

has the burden to identify specific facts showing the complaint can be amended to state a viable cause of action.  (*Ibid*.)  An appellant can meet this burden by identifying new facts or theories on appeal.  (*Ibid*.)

## II.  *First Cause of Action*

Flores's first cause of action is labeled "Professional Negligence," but his allegations assert only a claim that Sharp violated its regulatory duty to "keep accurate medical records" regarding Flores's "cardiac evaluation, testing, diagnosis, or treatment," and provide those records to Flores (or his agents) upon request.

This claim is barred by the law of the case doctrine.  In *Flores I,* we stated the trial court ruled that Flores's cause of action for Sharp's failure to provide him with his medical records did not state a viable cause of action under California law.  And we specifically upheld this conclusion because Flores did not assert any argument challenging the court's ruling.  (*Flores I, supra,* D071993.)

This determination was law of the case and was binding on Flores in all later proceedings in the case.  "The law of the case doctrine [provides] that when . . . an appellate court 'states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal . . . .' " (*Kowis v. Howard* (1992) 3 Cal.4th 888, 892-893; accord *Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482, 491.)  Under this doctrine, "the case may not go over ground that has been covered before in an appellate court [opinion]."  (*Sargon Enterprises, Inc. v. University of Southern California* (2013) 215 Cal.App.4th 1495, 1506.)

The doctrine applies if the prior appeal came after a trial or "a decision short of a full trial," such as "a judgment on a demurrer . . . ."  (*Hotels*

*Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 356; *Bergman v. Drum* (2005) 129 Cal.App.4th 11, 15, fn. 3.) The rule "serves to promote finality of litigation by preventing a party from relitigating questions previously decided by a reviewing court." (*George Arakelian Farms, Inc. v. Agricultural Labor Relations Bd.* (1989) 49 Cal.3d 1279, 1291.)

In *Flores I*, we upheld the court's ruling dismissing Flores's claim that Sharp breached a duty by failing to keep and provide records to him in 2014. He reasserted this same claim in his fourth amended complaint. Under the law of the case doctrine, our prior holding bars the identical claim in this case.

### III. *Second Cause of Action*

On Flores's second cause of action for intentional misrepresentation, Sharp argued this claim was barred by the collateral estoppel doctrine because the *Flores I* court had rejected his contention his medical malpractice claim could be tolled on an alternate theory of fraudulent concealment.

Collateral estoppel does not apply because there was no prior judgment. (See *Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 910.) Additionally, the law of the case doctrine does not apply because the issue is not the same. (See *Searle v. Allstate Life Ins. Co.* (1985) 38 Cal.3d 425, 434 [law of the case doctrine "precludes multiple appellate review of the *same issue* in a single case," italics added].) The issue whether a plaintiff has properly pled an intentional misrepresentation claim (governed by a three-year limitations period) is factually and legally distinct from the issue whether tolling applies to a medical malpractice claim. The viability of an intentional concealment cause of action was not addressed or resolved in *Flores I*.

But Flores's intentional misrepresentation claim fails as a matter of law on two independent grounds.

First, this court gave specific directions providing Flores with the opportunity to plead facts showing a tolling of the medical malpractice limitations period, and this did not encompass the right to add new causes of action to the complaint such as an intentional misrepresentation claim. When an appellate court remands a matter to a lower court with specific directions, the parties must adhere to those directions, and the court has the power "to act only in accordance with the direction of the reviewing court." (*Hampton v. Superior Court of Los Angeles County* (1952) 38 Cal.2d 652, 655; see *Ayyad v. Sprint Spectrum, L.P.* (2012) 210 Cal.App.4th 851, 859; *In re Justin S.* (2007) 150 Cal.App.4th 1426, 1434-1435; see also *York v. Strong* (2015) 234 Cal.App.4th 1471, 1477-1478.)

Second, the intentional misrepresentation claim fails because it was not pled with the required specificity.  (See *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638; accord *Golden Eagle Land Investment, L.P. v. Rancho Santa Fe Assn.* (2018) 19 Cal.App.5th 399, 428.)  To state a viable intentional misrepresentation claim, the plaintiff must plead " ' "*facts* which 'show how, when, where, to whom, and by what means the representations were tendered.' " ' " (*Tenet Healthsystem Desert, Inc. v. Blue Cross of California* (2016) 245 Cal.App.4th 821, 838.)  And to plead this claim against a corporation, " 'the plaintiff must specifically "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." ' " (*Ibid.*)  This rule provides the necessary notice to a corporate entity, and serves to " 'weed out' " unmeritorious fraud claims.  (*Ibid.*)

14

Flores's allegations do not meet these standards. Flores did not allege who made the alleged false misrepresentation; how this misrepresentation was made; to whom it was made; the date it was made; or facts supporting that any such statement was knowingly false, i.e., that records of any treatment at Sharp in 2008 in fact existed in 2014 and, if they did exist, the person who made the representation would have known of their existence.

Flores also has not demonstrated he can amend his complaint to provide the required specificity. In his appellate brief, he identifies individuals at the hospital "front desk" who allegedly failed to provide him with his medical records. However, this conduct allegedly occurred in 2016 and 2020, long after his claimed damages in 2014. Moreover, he identifies no facts showing that these individuals were aware of the existence of the medical records and intentionally concealed the records from him.

IV. *Third Cause of Action*

In his third cause of action, Flores alleged that Sharp breached a duty when it "negligently selected, retained, and/or allowed to practice . . . health care practitioners who were improperly trained and/or otherwise not competent to care for its patients or maintain medical records in accordance with the provisions of 22 CCR § 72543," including Dr. Kobernick. This cause of action contains two separate claims: (1) a professional negligence claim against Sharp based on Dr. Kobernick's services; and (2) a negligence claim based on Sharp employees' failure to properly "maintain medical records."

To the extent this cause of action seeks to hold Sharp liable for the health care provided by Dr. Kobernick based on injuries allegedly incurred in 2014, Flores does not specially address this claim in his appellate briefs and it is therefore forfeited. (See *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655-656; *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125.)

15

Moreover, this claim is time barred. As we held in *Flores I*, to establish tolling for a malpractice claim under section 352, subdivision (a) based on legal incapacity, a plaintiff must plead that during the relevant times he was " 'incapable of caring for his property or transacting business or understanding the nature or effects of his acts . . . .' " (*Flores I, supra,* D071993.)

In his fourth amended complaint, Flores alleged he "lacked the legal capacity to make decisions from June 9, 2014 to . . . November 16, 2016" because he "was receiving medical treatment including . . . multiple brain surgeries, a shunt implant for his brain, decompression for his brain [and] many other procedures." But Flores did not state this medical treatment left him " 'incapable of caring for his . . . property or transacting business or understanding the nature or effects of his . . . acts . . . ,' " which was the legal standard identified in our *Flores I* decision. (*Flores I, supra,* D071993.) Nor did he allege the necessary *specific facts* supporting the claim. (*Ibid.*) A surgery and/or medical procedures do not necessarily incapacitate a person for two years. Flores was given clear instructions that he needed to plead specific facts, in good faith, showing he was legally incapacitated during the entire relevant time period. He did not do this, and thus his claim is time barred (even if it was not forfeited by his failure to address this claim in his appellate briefs).

On the portion of his negligence claim pertaining to Sharp employees' failure to provide medical records, this claim is identical to the first cause of action, and fails for the same reason under the law of the case doctrine. The claim was adjudicated in *Flores I*, and thus Flores is barred from relitigating it.

16

## V. *Additional Contentions*

In his appellate brief, Flores contends that Judge Taylor was biased against him based on the court's questions to him regarding why the Court of Appeal remanded the case and its manifesting impatience with him and his claims. We have carefully reviewed the record, and find no evidence of bias. To the contrary, Judge Taylor showed commendable tolerance and understanding by allowing Flores leave to amend after filing an essentially incomprehensible third amended complaint. After permitting Flores to fully assert his arguments orally and in writing, the court issued a lengthy written ruling explaining the legal rationale underlying each of its conclusions. The record does not support any indication of bias whatsoever.

Flores appears to again challenge the court's prior ruling quashing his subpoenas. Because he did not reassert his arguments regarding discovery in the remanded proceedings, this argument is not properly before us. Moreover, our *Flores I* ruling that the court did not err in quashing the deposition subpoenas is law of the case and thus relitigation of this issue is barred.

## DISPOSITION

We affirm the judgment. The parties to bear their own appellate costs.


HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


AARON, J.

17