Filed 4/30/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LEONARD SCHWARZBURD et al., | |
| Petitioners and Respondents, | A139630 |
| v. | |
| KENSINGTON POLICE PROTECTION & COMMUNITY SERVICES DISTRICT BOARD et al., | (Contra Costa County Super. Ct. No. MSN121625) |
| Respondents and Appellants. | |

Writ respondents the Kensington Police Protection and Community Services District Board (Board) and individual Board members Charles Toombs, Linda Lipscomb, and Richard Lloyd appeal from the trial court's order denying their special motion to strike a writ petition under Code of Civil Procedure[1] section 425.16. The petition was filed by petitioners Leonard Schwarzburd, Dairlyn Chelette, Mabry Benson, Celia Concus, Llewellyn Stanton, Eyleen Nadolny, Cathie Kosel, Eyleen Nadolny, and Jeffrey Koehler. Section 425.16 sets out a procedure for striking complaints in lawsuits that are commonly known as "SLAPP" suits (strategic lawsuits against public participation). The trial court found the petition did not arise out of defendants' protected expressive activity. We reverse as to the three individual defendants and affirm as to the Board.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Kensington is an unincorporated community of several thousand residents located just north of Berkeley.[2] It maintains its own police department via the Kensington Police

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] See <http://kensingtoncalifornia.org/> (as of Apr. 30, 2014).

Protection and Community Services District (District), which is organized under the Community Services District Law (Gov. Code, § 61000 et seq.)  The District is governed by a board of directors.  The Board consists of five board members.  The Board sets the salary for the combined position of General Manager/Chief of Police, currently held by Greg Harman.  Harman's prior contract expired on June 30, 2012.

In advance of a July 12, 2012 Board meeting, a notice of agenda was posted that included the following item of business: "KPPCSD Board Vice President Tony Lloyd will present for Board discussion and possible action the salary compensation package for General Manager/Chief of Police Greg Harman for the July 1, 2012 – June 30, 2014 contract period."

On July 12, 2012, discussion of Harman's salary compensation package began at approximately 7:45 p.m.  Lloyd addressed Harman's performance.  Next, Lipscomb compared salaries in other jurisdictions showing that Harman was "at the bottom" of the list.

The Board's Policy and Procedures Manual (Manual)[3] states that meetings should adjourn at 10:00 p.m. unless extended by a four-fifths vote.  Accordingly, the Manual provides that at 9:45 p.m., the Board "shall stop the progress of the meeting and suggest which of the remaining items on the agenda will be addressed in the remaining fifteen minutes of the meeting or ask the Board to consider whether it will extend the meeting . . . ."  At the July 12, 2012 meeting, at approximately 9:45 p.m., a vote was taken to extend the meeting.  The result was three-to-two in favor of extension.  The two Board members who voted against extending the meeting were petitioner Kosel and Mari Metcalf, attorney of record for petitioners here.  The meeting then continued on until its regularly scheduled time to adjourn: 10:00 p.m.

---

[3] Petitioners and Respondents' motion for judicial notice is granted.

2

At 10:00 p.m., the Board again addressed whether to continue the meeting in order to conclude the active discussion regarding Harman's salary compensation package. This time, all five Board members voted unanimously to extend the meeting without a time limitation. The meeting continued. At the conclusion of the meeting, the Board voted to offer Harman an increased base salary of $148,441 for the new contract period of July 1, 2012 to June 30, 2014, as well as a $16,754 retention and merit bonus. The three individual Board members sued here—Lloyd, Lipscomb and Toombs—constituted the majority voting in favor of the resolution to increase Harman's salary compensation package. The two Board members who voted against were Kosel and Metcalf.

On November 3, 2012, petitioners filed their amended petition for writ of mandate. The basis for the suit, as alleged in the petition, is that the Board failed to give proper advance notice of the business items that were discussed at the July 12, 2012 meeting. The petition also alleges the Board impermissibly extended the meeting after failing to secure the four votes at 9:45 p.m. that were required to continue the meeting past 10:00 p.m. The petition seeks the issuance of a writ of mandate to direct the Board to vacate its vote to increase Harman's compensation package. Petitioners also seek an order to enjoin the merit bonus payment, which they characterize as a retroactive pay increase, and a declaration that the vote to increase Harman's salary was unlawful.

On March 1, 2013, respondents filed and served their answer to the petition.

On April 2, 2013, respondents filed a special motion to strike the amended petition pursuant to section 425.16.

On July 5, 2013, the trial court filed its order denying respondents' motion to strike. Citing solely to the case of *San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Association* (2004) 125 Cal.App.4th 343 (*San Ramon*), the court held: "Here, Petitioners take contest with the decision Respondents reached and the process they followed in reaching that decision, which included allegedly

3

violating Respondent's own policies and procedures and failing to comply with the Brown Act. Neither are acts in furtherance of the right of petition or free speech."

On August 30, 2013, respondents filed their notice of appeal.[4]

**DISCUSSION**

**I.** *Section 425.16 and the Standard of Review*

Section 425.16, known as the anti-SLAPP statute, provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) "The phrase 'arising from' . . . has been interpreted to mean that 'the act underlying the plaintiff's cause' or 'the act which forms the basis for the plaintiff's cause of action' must have been an act in furtherance of the right of petition or free speech." (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1001.) "The goal [of section 425.16] is to eliminate meritless or retaliatory litigation at an early stage of the proceedings." (*Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 806.)

Courts engage in a two-step process in determining whether a cause of action is subject to a special motion to strike under section 425.16. First, the court determines if the challenged cause of action arises from protected activity. If the defendant makes such a showing, the burden shifts to the plaintiff to establish, with admissible evidence, a reasonable probability of prevailing on the merits. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).) "Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal

_____

[4] The notice of appeal identifies the board, as well as the individual board members, as appellants. Additionally, defendants argued in their opening brief that "the Board and the individual Board members' speech qualify for protection under the anti-SLAPP statute." (Capitalization omitted.)

4

merit—is a SLAPP, subject to being stricken under the statute." (*Id.* at p. 89, italics omitted.)

A ruling on a section 425.16 motion is reviewed de novo. (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 645.) We review the record independently to determine whether the asserted cause of action arises from activity protected under the statute and, if so, whether the plaintiff has shown a probability of prevailing on the merits. (*ComputerXpress, Inc. v. Jackson, supra,* 93 Cal.App.4th at p. 999; *Seelig v. Infinity Broadcasting Corp., supra,* 97 Cal.App.4th 798, 807.)

## II. *The Public Interest Exception Under Section 425.17*

We first address petitioners' assertion that section 425.17 mandates our affirmance of the trial court's denial of defendants' motion to strike.[5]

Section 425.17, subdivision (b) provides, in relevant part: "Section 425.16 does not apply to any action brought solely in the public interest or on behalf of the general public if all of the following conditions exist: [¶] (1) The plaintiff does not seek any relief greater than or different from the relief sought for the general public . . . . [¶] (2) The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons. [¶] (3) Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's state in the matter."

In *Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, the Supreme Court explained that "[i]n 2003, the Legislature enacted section 425.17 to curb the 'disturbing abuse' of the anti-SLAPP statute." (*Id.* at p. 316.) "According to the sponsor of . . . section 425.17, Senator Sheila Kuehl, the same types of businesses who used the SLAPP action were inappropriately using the anti-SLAPP motion against their

---

[5] Amicus curiae the American Civil Liberties Union has submitted a brief in support of this argument.

5

public-interest adversaries. Hence, the Legislature expressly designed subdivision (b) of section 425.17 to prevent the use of the anti-SLAPP device against 'specified public interest actions,' among others." (*Blanchard v. DIRECTV, Inc.* (2004) 123 Cal.App.4th 903, 913, italics omitted.) If a plaintiff's lawsuit comes within section 425.17, subdivision (b), it is exempt from the anti-SLAPP statute and, thus, a trial court may deny the defendant's special motion to strike without determining whether the plaintiff's causes of action arise from protected activity and, if so, whether the plaintiff has established a probability of prevailing on those causes of action under section 425.16, subdivision (b)(1). (See, e.g., *Northern Cal. Carpenters Regional Council v. Warmington Hercules Associates* (2004) 124 Cal.App.4th 296, 299.)

Assuming the first condition of section 425.17, subdivision (b), is satisfied here, we conclude petitioners cannot satisfy the second prong because their claims do not operate to enforce an important right affecting the public interest. Nor, if successful, would they confer a significant benefit on the general public or a large class of persons. While amicus curiae argues that petitioners laudably seek to enforce the Brown Act and the Board's own open meeting requirements, it is undisputed that the Brown Act has no application to this case.[6] Further, the assertion that the requirement calling for Board meetings to end at 10:00 p.m. "serves to accommodate the needs of these and other residents and thereby to increase public access" is illogical. (See *Holbrook v. City of Santa Monica* (2006) 144 Cal.App.4th 1242, 1250 [plaintiffs did not show "that cutting off public comment and input, ending member debate, and preventing the city council from further legislative action at an 11:00 p.m. witching hour benefits the public in any way"].)

---

[6] Assembly Bill No. 1464, which was signed into law on June 27, 2012 and effective immediately, suspended Government Code section 54954.2, subdivision (a) during the 2012-2013 budget year.

6

Additionally, we note the third prong of section 425.17, subdivision (b) is arguably unsatisfied, at least as to the three individual defendants, because private enforcement, as to them, is *not* necessary. When questioned by the trial court as to why they had sued the three individuals when they could get the relief they were looking for by just suing the District, petitioners' attorney responded, "Those three individuals violated the procedures and the rules." He also admitted: "I don't think there's any additional advantage there, any strategic advantage." Petitioners have not alerted us to any additional justifications for the decision to sue the three individual Board members.[7] Thus, while they could have sued the District directly to challenge the validity of Harman's contract, they elected not to do so, lending support to defendants' assertion that petitioners' motivation in filing this lawsuit was, at least in part, to intrude upon the First Amendment rights of the individual Board members. This is the kind of conduct section 425.16 was intended to discourage.[8] Accordingly, we proceed to consider defendants' challenge to the trial court's ruling.

### III. *Protected Activity*

In the present case, the trial court did not reach the second step of the anti-SLAPP test, because it ruled the petition did not arise out of acts in furtherance of the right to petition or free speech as defined in section 425.16.[9] Defendants argue that petitioners'

---

[7] We note the caption of the petition does not name all five current Board members. Additionally, we are informed that at the time the amended petition was filed, Kosel and Metcalf were also on the Board. The defendants were not served until after Kosel lost a bid for re-election and Metcalf had resigned from the Board.

[8] We disagree with amicus curiae's implicit suggestion that our ruling here has the effect of immunizing legislative acts from judicial scrutiny. Petitioners were simply required to demonstrate a reasonable probability that they would prevail in their underlying suit. Further, our holding does not extend to the Board as an entity. Thus, our decision in no way impedes petitioners' ability to obtain the relief they purport to seek.

[9] "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: … (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, . . . or (4) any other conduct in furtherance of the

claim arises out of protected First Amendment voting and legislative deliberative activities concerning an important public issue. We agree, but only as to the three individual defendants. As to the Board itself, we concur with the trial court that, per *San Ramon*, *supra*, 125 Cal.App.4th at pp. 353-354, the anti-SLAPP statute does not apply to the allegations raised in the instant petition.[10]

In order to show that a challenged cause of action is one "arising from" protected activity, "the defendant's act underlying the plaintiff's cause of action must itself have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 (*Cotati*), italics omitted.)[11] The fact that a cause of action may have been triggered by protected activity does not mean it arose from that activity. (*Ibid.*) We look to the gravamen of the plaintiff's cause of action to determine whether the anti-SLAPP statute applies. "[W]hen the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute." (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188; see also *Cotati*, *supra*, 29 Cal.4th at p. 79.)

As noted above, the trial court relied solely on *San Ramon, supra,* 125 Cal.App.4th in concluding the petition did not implicate protected speech or conduct.

exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

[10] Defendants claim petitioners erred in naming the Board rather than the District in their petition, contending that the Board is not a proper party. As we have concluded the Board itself cannot assert the anti-SLAPP statute here, we need not address this contention.

[11] To decide whether an action arises from protected activity, we consider not just the pleadings, but also the supporting and opposing affidavits stating the facts on which liability is based. (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1232.)

However, that case is not controlling as to the individual Board member defendants. In *San Ramon,* a fire district sought mandamus relief after a county retirement board decided to increase contributions payable by the fire district and its employees. (*Id.* at p. 347.) Our colleagues in Division Two upheld the trial court's denial of an anti-SLAPP motion. The introduction to that opinion states: "This case requires us to decide whether litigation seeking judicial review of an action or decision by a public entity is subject to a special motion to strike under the anti-SLAPP statute . . . merely because the challenged action or decision was taken by vote after discussion at a public meeting. Our answer is no. Even if the conduct of *individual public officials in discussing and voting* on a public entity's action or decision could constitute an exercise of rights protected under the anti-SLAPP statute—*an issue we need not and do not reach*—this does not mean that litigation challenging a public entity's action or decision always arises from protected activity. In the present case, the litigation does not arise from the speech or votes of public officials, but rather from an action taken by the public entity administered by those officials. Moreover, that action was not itself an exercise of the public entity's right of free speech or petition. We therefore affirm the trial court's order denying the entity's special motion to strike." (*Id.* at pp. 346-347, italics added, fn. omitted.) The court in *San Ramon* went on to say, "although we need not and do not reach the issue here because *no individual Board member was sued* by the District, we note that there is support for the argument that the protection accorded by the anti-SLAPP statute extends to statements made by public officials at an official public meeting, *and perhaps also to their votes*. [Citations.]" (*Id.* at p. 353, italics added.)

Thus, even assuming *San Ramon* is correctly decided, the case did not entirely address the contentions raised in this appeal. The appellate court in *San Ramon* expressly stated it was *not* deciding the issue in the context of suits brought against individual public officials. Yet in the present action, petitioners have sued three individual Board members, in addition to naming the Board (as an entity) as a defendant. Cases are not

9

authority for propositions not considered. (*People v. Barragan* (2004) 32 Cal.4th 236, 243.) Moreover, observing in dictum that support exists for applying section 425.16 to statements made by public officials at official public meetings, *San Ramon* cited *Schroeder v. Irvine City Council* (2002) 97 Cal.App.4th 174, 183, fn. 3 (*Schroeder*), which noted, also in dictum, that insofar as the lawsuit at issue targeted city council members, the basis for their liability was premised on their votes in favor of adopting a voter participation program, and voting is conduct qualifying for First Amendment protection. (See also *Vergos v. McNeal* (2007) 146 Cal.App.4th 1387, 1398.)

We conclude, as to the three individual defendants in the present case, petitioners' suit triggered section 425.16, subdivision (e)(2), i.e., "any written or oral statement or writing made in connection with an issue under consideration or review by . . . any other official proceeding authorized by law," and subdivision (e)(4), i.e., "any other conduct in furtherance of the exercise of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest." (See *Schroeder, supra,* 97 Cal.App.4th 174, 183, fn. 3.) The gravamen of petitioners' suit is that defendants violated Board policy by voting in a manner inconsistent with Board policy to extend the July 12, 2012 meeting, and by discussing and voting on a matter (the retention bonus) that was not properly noticed. These defendants were not sued simply because they voted, but based on *how* they voted and expressed themselves at the Board meeting. However, as to the Board itself, as an entity, we agree with the trial court that *San Ramon* bars this section 425.16 motion. (See *San Ramon, supra,* 125 Cal.App.4th at p. 353 [nothing about the Board's "collective action" in requiring the plaintiff District to make additional contributions to a retirement fund implicated the rights of free speech or petition].)

Amicus curiae notes that *Donovan v. Dan Murphy Foundation* (2012) 204 Cal.App.4th 1500, held that "[t]he mere act of voting . . . is insufficient to demonstrate that conduct challenged in a cause of action arose from protected activity." (*Id.* at pp. 1506-1507.) That case is distinguishable, however, in that the defendants were not

associated with a public entity. In *Donovan,* a former director of a nonprofit organization sued the foundation and its current directors alleging he was wrongfully removed after raising concerns about financial oversight and governance. The plaintiff sued all of the directors, including those who had objected and voted against his removal. (*Id.* at p. 1504.) The appellate court ruled against the defendants, holding that a vote is not necessarily enough to support an anti-SLAPP motion. (*Id.* at pp. 1506-1507.) As additional basis for denying the anti-SLAPP motion, the *Donovan* court further noted that, unlike here, the foundation was not a legislative body and the foundation's financial oversight was not an issue of public interest. (*Id.* at p. 1508.) Accordingly, we decline the invitation to follow *Donovan.*

**IV. *The Petition Lacks Merit***

In the second prong of the anti-SLAPP analysis, the court must determine whether the plaintiff has shown, by admissible evidence, a probability of prevailing on the claim. (§ 425.16, subd. (b).) The trial court in this case did not decide this issue, because it ruled against defendants in prong one. In such circumstances, we may remand the matter to the trial court to conduct the second-prong analysis. (See, e.g., *Birkner v. Lam* (2007) 156 Cal.App.4th 275, 286.) On the other hand, we have discretion to decide the issue ourselves, since it is subject to independent review. (*Roberts v. Los Angeles County Bar Assn.* (2003) 105 Cal.App.4th 604, 615-616 [deciding prong-two issue despite trial court's failure to reach it].) As the facts here are undisputed, and as Harman's current contract will expire shortly after this opinion is filed, we conclude it would be more efficient for us to resolve the matter in this opinion.

The petition complains of two alleged violations of the Board's Manual: (1) continuing the meeting after 10:00 p.m. on only a three-two vote in favor of doing so; and (2) failing to properly notice the substance of July 12, 2012 Board meeting. The record on appeal reveals these contentions lack merit. Thus, there is not a reasonable probability that petitioners' action can succeed.

11

As noted above, the petition challenges the validity of the vote taken at 9:45 p.m.: "In spite of [the Board's] Policies and Procedures section 5010, which states: 'All meetings of the Board of Directors must be adjourned by 10:00 p.m. Meetings can be extended by a four-fifths vote by the Board, or if less than four-fifths of the Directors are present, a unanimous vote of those Directors that are present,' Board President Charles Toombs continued to conduct the meeting beyond 10:00 p.m." It is true that section 5010.51 of the Board's Manual states: "If a meeting is still in session at 9:45 p.m., the Board President (or whoever is chairing the meeting) shall stop the progress of the meeting and suggest which of the remaining items on the agenda will be addressed in the remaining fifteen minutes of the meeting or ask the Board to consider whether it will extend the meeting as described in Policy #5010.50." It is also undisputed that when the Board voted at 9:45 p.m. on whether to extend the meeting, the vote was only three-to-two, thus falling one vote short of the four votes required. What the petition *fails* to state, however, is the *undisputed* fact that the Board took a vote at 10:00 p.m. and *unanimously* voted to continue the meeting past that time. Thus, the Board did not violate its own policies in allowing the meeting to go past 10:00 p.m.

As to the alleged notice violation, the agenda informed the public that the Board would "present for Board discussion and possible action the salary compensation package for General Manager/Chief of Police Greg Harman for the July 1, 2012 – June 30, 2014 contract period." Petitioners claim the notice violated its own policies because it did not inform the public that the Board would also be considering awarding Harman a retroactive pay increase for his prior contract.[12] Even though it appears the amount of the bonus payment was calculated based on the salary he had earned in the prior contracting period, it is clear that the allegedly "retroactive" payment was, in reality, a "retention bonus" granted as an incentive to encourage Harman to continue his tenure. Importantly,

_____

[12] Petitioners have abandoned their argument made in the trial court that the Board violated the Brown Act by failing to provide adequate notice.

12

there is nothing in the record to suggest that Harman would have received the bonus had he not agreed to continue working for the District under the new contract. The bonus is most reasonably understood as constituting an element of his "salary compensation package" for the new contract, and not a retroactive pay increase. Thus, the notice of the meeting satisfactorily identified this item of business. Thus, petitioners cannot demonstrate a probability that they will prevail.[13]

### DISPOSITION

The trial court's order is reversed and the matter is remanded for further proceedings consistent with this opinion. The parties are to bear their own costs on appeal.

_____
Dondero, J.

We concur:

_____
Margulies, Acting P.J.

_____
Banke, J.

---

[13] As indicated above, our holding does not apply to the Board itself as we agree with the *San Ramon* opinion's observation that "[a]s to the Board's substantive action in the present case, there is nothing about that decision, qua governmental action, that implicates the exercise of free speech or petition." (*San Ramon, supra,* 125 Cal.App.4th at p. 355.) However, in light of the fact that we have concluded the petition lacks merit, the viability of the instant suit is questionable at best.

Trial Court:                                    Contra Costa County Superior Court

Trial Judge:                                Hon. Steven K. Austin

Counsel for Petitioners and Respondents:      Law Offices of Mari E. Metcalf:
    Mari E. Metcalf

Law Offices of Timothy P. Rumberger:
    Timothy P. Rumberger

Counsel for Respondents and Appellants:     Hanson Bridgett:
    Kimon Manolius,
    Joseph M. Quinn,
      and
    Emily M. Charley

Counsel for Amicus Curiae on behalf of
    Respondents and Appellants:            Michael T. Risher
    of the American Civil Liberties Union
    Foundation of Northern California, Inc.