Filed 7/24/25  Lacher v. Liberty Surplus Ins. Corp. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ROSLYN LACHER,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>LIBERTY SUPRLUS INSURANCE CORPORATION et al.,<br><br>　　Defendants and Appellants. | D084439<br><br><br>(Super. Ct. No.<br>　37-2022-00043452-CU-BC-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Reversed and remanded with directions.


Lewis Brisbois Bisgaard & Smith and Jeffry A. Miller, Corinne C. Bertsche and Craig T. Mann for Defendants and Appellants.

Arena Law Group and Albert W. Arena, Taylor Arnett for Plaintiff and Respondent.


Defendants and appellants Paul Peterson, D.C., Casey Chiropractic, Inc., doing business as Chiropractique (Chiropractique), and Peterson's

liability insurance carrier, Liberty Surplus Insurance Corporation (Liberty), appeal from an order denying their joint Code of Civil Procedure[1] section 425.16 special motion to strike plaintiff and respondent Roslyn Lacher's first amended complaint. They contend: (1) the court abused its discretion in finding the motion untimely as to Peterson and Chiropractique; (2) the court erred in concluding the breach of contract cause of action and declaratory relief claim did not arise from protected activity; and (3) Lacher cannot establish a probability of prevailing on her breach of contract cause of action and declaratory relief claim.

Lacher has moved to dismiss this appeal as to Peterson and Chiropractique, contending it is improper because the court ruled the anti-SLAPP motion was untimely as to them; therefore, they lack standing to pursue this appeal. She also seeks sanctions against defendants for filing a frivolous appeal.

We reverse the trial court's order and remand with directions. We also deny Lacher's opposed motion for dismissal and sanctions.

FACTUAL AND PROCEDURAL BACKGROUND

We state the facts in the light most favorable to Lacher as the opponent of the special motion to strike. We do not weigh evidence or resolve conflicting factual claims. Our inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. We accept the plaintiff's evidence as true, and evaluate the defendant's showing only to determine if it defeats

---

[1] Undesignated statutory references are to the Code of Civil Procedure. Section 425.16 is commonly referred to as the anti-SLAPP statute, since a special motion under the statute seeks to strike a " '[s]trategic lawsuit against public participation' " or SLAPP. (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 882, fn. 2 (*Wilson*).)

the plaintiff's claim as a matter of law. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3; *Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940.)

In September 2019, Lacher filed a medical malpractice suit against Peterson and Chiropractique.

In June 2020, Windham at Carmel Mountain Ranch Association (Windham Association) filed a notice of lien in the malpractice action, but did not serve it on Lacher as required by statute. Lacher alleged that "the rights of a party are not affected by the lien until the party has notice of [it]"; consequently, her underlying medical malpractice case was unaffected by the lien.

In July 2022, Lacher and defendants signed a settlement agreement and release of claims, under which defendants would pay Lacher $85,000 within 21 days of receiving the release, in exchange for her dismissal of the lawsuit with prejudice. The settlement agreement also provides that Lacher will be responsible for satisfying any liens against the settlement proceeds.[2]

---

[2] The settlement agreement's "Expenses and Liens" clause states in full: "[Lacher] hereby agrees and acknowledges that she is responsible for any and all statutory rights, liens, assignment rights, claims or right of reimbursement or recovery which exist, or in the future may exist, on any of the proceeds of the settlement and agrees to satisfy all such rights, liens, claims or right of reimbursement or recovery. [She] warrants that she has advised [defendants] of any statutory right, liens, claims or right of reimbursement or recovery of which [she] is or should be aware, and that in the event any claim is made against [defendants] or their heirs, successors, attorneys, and/or insurers of [defendants] by any third party on account of a statutory right, lien, claim or right of reimbursement or recovery which exists, or in the future may exist, [Lacher] agrees to hold harmless

3

On August 5, 2022, Liberty issued a check made payable to Lacher and her counsel and, days later, Liberty notified Lacher that it had mailed to her counsel the $85,000 check.

In August 2022, Windham Association, a judgment creditor, was unsuccessful in a first ex-parte request for an order restraining defendants from transferring the settlement proceeds to Lacher, or for a temporary restraining order and an order to specially set a hearing under section 708.440.[3]

Also in August 2022, defendants filed an initial interpleader complaint requesting to deposit the settlement funds with the court, but the court dismissed it.

In October 2022, Lacher filed her complaint against defendants, alleging breach of contract and requesting declaratory relief.

---

and indemnify [defendants] and their heirs, successors, attorneys and/or insurers, including the payment of reasonable attorney's fees, fines, penalties and interest, for any and all such claims which they may be forced to defend and/or indemnify. This paragraph applies to, but is not limited to, statutory rights, liens, claims or right of reimbursement or recovery asserted by all judgment creditors, health care providers, medical insurance carriers or governmental entities which might have any interest in or claim against the proceeds of this settlement."

[3] Section 708.440 provides: "Except as provided in subdivision (c) of Section 708.410, unless the judgment creditor's money judgment is first satisfied or the lien is released, the judgment recovered in the action or special proceeding in favor of the judgment debtor may not be enforced by a writ or otherwise, and no compromise, dismissal, settlement, or satisfaction of the pending action or special proceeding or the judgment procured therein may be entered into by or on behalf of the judgment debtor, without the written consent of the judgment creditor or authorization by order of the court[.]"

In November 2022, Lacher filed in the medical malpractice case an ex parte application requesting the court consider the instant breach of contract and declaratory relief action a related case, arguing the two matters involve: the same parties; "the settlement as between those parties and in particular possession of the settlement funds. The issues and litigation surrounding the issues is substantially the same and likely to require substantial duplication of judicial resources if heard by different judges."[4] Lacher argued, "[The breach of contract and declaratory relief action] only came about because of the post-settlement issues that have been before this [c]ourt since the settlement in July 2022 [and that action] relates to and its rulings significantly impact [the medical malpractice case] and its outcome." There was no objection to it, and the court granted Lacher's application that same month.

On December 8, 2022, Lacher filed the operative first amended complaint, also alleging breach of contract and requesting declaratory relief. Lacher alleged as to the breach of contract cause of action: "[Liberty's attorney's] retention of the check for reasons outside of the settlement agreement makes [d]efendants liable for not only a breach of contract but also a breach of the covenant of good faith and fair dealing."

Lacher alleged defendants "have attempted to perform their obligation under the agreement, by remitting a settlement draft to [her]. However, [defendants' attorney refuses] to release that settlement draft interfering with defendants['] performance of their obligation under the agreement. [¶] Based upon the actions of [their attorney, defendants] currently stand in breach of the agreement." (Some capitalization omitted.)

---

4    We grant the appellants' motion for judicial notice of court documents relating to the Windham Association intervenor action under Evidence Code sections 452 and 453.

5

Lacher also alleged: "Defendants [ ] believe they are disinterested stake holders and desire the court in [the interpleader action] to decide to whom the proceeds of the settlement draft belong; despite the terms of the settlement agreement, the settlement draft made out to [Lacher] and her counsel and the lien statute's [*sic*] which govern these proceedings; and are inapplicable under the facts and circumstances here. [¶] . . . In light of the above beliefs, [defendants' attorney] filed an interpleader complaint, on behalf of defendants Peterson, Chiropractique and Liberty Surplus Insurance Corporation. In conjunction with the interpleader complaint [defendants' attorney] caused Defendant Liberty Surplus Insurance Corporation to issue a second settlement draft in the name of the San Diego Superior Court; for purposes of interpleading/depositing the settlement funds into the court." (Some capitalization omitted.)

Lacher further alleged as to declaratory relief: "[A]ll defendants . . . have breached and continue to breach their obligations under the agreement and the covenant of good faith and fair dealing, by not releasing the settlement draft to her and her counsel." (Some capitalization omitted.)

The relief Lacher prayed for in the first amended complaint included orders declaring that "neither [her] nor [d]efendants' rights were affected by the lien Association filed," as well as that "defendants [are] in breach of the agreement and requiring them to release to [her] and her counsel the settlement draft prior to its expiration; and/or in the alternative to make another check out for the same amount and in the same manner as the August 5, 2022 draft."

In January 2023, the court denied Lacher's motion to approve settlement and for an order releasing lien and compelling turnover of the settlement funds to her. The court set forth in detail the actions taken in the

6

case thus far, pointing out, "This case has a much longer history than appears to be justified by the issues. The register of action already has over two hundred entries."

In April 2023, the court granted defendants' renewed interpleader action and permitted the $85,000 settlement check to be deposited with the superior court: "Given that [Lacher] appears to agree with defendants that there was a settlement of all [her] claims against the defendants, there appears to be no reason not to grant [their] request to deposit the funds with the [c]ourt and to discharge them from liability in the intervenor action."

On October 24, 2023, Peterson and Chiropractique were served with the first amended complaint, and they timely answered.

On December 14, 2023, Liberty was served with the first amended complaint. It demurred to the breach of contract cause of action and request for declaratory relief, which the court overruled.

On January 16, 2024, Peterson, Chiropractique and Liberty filed a joint anti-SLAPP motion, which the court denied.

In August 2024, following a bench trial on Windham Association's complaint-in-intervention, the trial court found in its favor, ruled Lacher had received proper and sufficient legal notice of the lien, and ordered the $85,000 settlement agreement proceeds disbursed to Windham Association upon entry of judgment in the underlying case.

*The Anti-SLAPP Motion*

*Defendants' Arguments*

7

Defendants argued as to the anti-SLAPP statute's first prong that Lacher's first amended complaint arose from protected activity: "[A]ll of [Lacher's] claims are based on the terms of the settlement agreement and defendants' conduct with respect to the release of settlement funds pursuant to said settlement agreement, including the deposit of the funds in interpleader with the court." (Some capitalization omitted.)

As to the anti-SLAPP statute's second prong, defendants argued Lacher could not prevail on her breach of contract cause of action as they had deposited the settlement funds with the superior court through the interpleader action. Further, under the settlement agreement, Lacher was responsible for satisfying all liens, claims or assignment rights; therefore, she failed to establish her performance, or her excuse for nonperformance under the lien provision.

Defendants argued the declaratory relief request was duplicative of the breach of contract cause of action. They added that because they had deposited the settlement proceeds with the court, there was no additional basis for declaratory relief.

*Lacher's Opposition*

Lacher argued in opposition that the anti-SLAPP motion was untimely as to Peterson and Chiropractique. She also argued the breach of contract cause of action did not arise from protected activity, as the actual breach alleged was Liberty's refusal to release the settlement funds to her and her counsel: "[T]he core injury-producing conduct asserted by [Lacher] in the breach of contract cause of action is defendants' subsequent breach of the settlement agreement, in not releasing the funds and not returning a fully executed agreement, after the case was concluded. Such is not protected

activity." Moreover, she argued the breach did not involve any wrongful conduct in the settlement negotiations or in the settlement agreement.

Lacher argued she could establish a probability of prevailing on the merits of her breach of contract action because "Liberty breached the agreement in not releasing the settlement draft with all signatures showing execution of the documents. . . . Defendants also breached the agreement by mailing the check to defense counsel instead of [Lacher's] counsel and then refusing to release the settlement check and refusing to release it to [Lacher] and her counsel."

Lacher denied the declaratory relief request arose from protected activity: "[Lacher] seeks a declaration from this court as to the parties' respective rights and obligations under the agreement. These facts allege a controversy over the validity and enforceability of the settlement agreement and is not protective [*sic*] activity." (Some capitalization omitted.)

*Defendants' Reply*

Defendants argued in reply the court should exercise its discretion to consider their motion timely: "It is uncontested that the anti-SLAPP motion was timely filed for defendant Liberty. Rather than filing two separate but essentially identical anti-SLAPP motions, defendants Dr. Peterson and Chiropractique properly joined defendant Liberty's anti-SLAPP motion. Thus, in the interest of judicial efficiency, this court should in its discretion consider the anti-SLAPP motion for all defendants." (Some capitalization omitted.)

*The Court's Ruling*

The trial court ruled as to Peterson and Chiropractique that the anti-SLAPP motion was untimely: "[D]efendants acknowledge plaintiff served Dr. Peterson and Chiropractique with the [first amended complaint] on or about

9

October 24, 2023.  Because the special motion to strike was filed more than 60 days later [on January 16, 2023], Dr. Peterson and Chiropractique's motion is untimely and the Court declines to consider it."

The court concluded the motion was timely as to Liberty, but denied it: "[Lacher's first amended complaint] does not allege anything wrongful about defendants and [Lacher] entering into the settlement agreement.  Rather, [it] alleges the parties entered [into] the agreement and yet Liberty and the other defendants breached the agreement by not releasing the settlement document to her and by not releasing the settlement funds check to her.  . . . Thus, the alleged wrongful conduct arises from the refusal to release the funds that are the subject matter of the agreement; the agreement is thus incidental."  It ruled that under the burden-shifting scheme set forth in section 425.16,  "Liberty has not met its burden to show the conduct at issue underlying the claims in the complaint are protected.  Thus, the burden did not shift to [Lacher] on prong two."

DISCUSSION

I. *Timeliness of the Anti-SLAPP Motion*

Defendants contend the court erred by finding the anti-SLAPP motion untimely as to Peterson and Chiropractique:  "All three defendants jointly filed the anti-SLAPP motion shortly after the 60-day period expired as to [Peterson and Chiropractique], but within the 60-day period applicable to Liberty.  The court's consideration of the motion as to [Peterson and Chiropractique] would not have prejudiced Lacher because [their] anti-SLAPP motion was brought jointly with Liberty and the parties had yet to engage in litigation.  Because the merits of the motion was identical as to all Defendants, and Liberty's motion should have been granted, denying the other defendants' motion for untimeliness would only cause a SLAPP suit to

continue needlessly.  Thus, consideration of [Peterson and Chiropractique's] anti-SLAPP motion along with Liberty's motion furthers the purpose of the anti-SLAPP statute."

A.  *Applicable Law*

The purpose of section 425.16, subdivision (f)'s 60-day limitation is to permit the defendant to test the foundation of the plaintiff's action before having to devote its time, energy and resources to combating a meritless lawsuit and to avoid tactical manipulation of the stays that attend anti-SLAPP proceedings.  (*Platypus Wear, Inc. v. Goldberg* (2008) 166 Cal.App.4th 772, 783.)  Further, "[t]he purpose of these timing requirements is to facilitate the dismissal of an action subject to a special motion to strike early in the litigation so as to minimize the cost to the defendant."  (*Chitsazzadeh v. Kramer & Kaslow* (2011) 199 Cal.App.4th 676, 682 (*Chitsazzadeh*.))

We review a trial court's denial of an untimely anti-SLAPP motion under an abuse of discretion standard.  (*Kunysz v. Sandler* (2007) 146 Cal.App.4th 1540, 1542-1543.)  Discretion under section 425.16, subdivision (f) "refers to a zone of latitude within which a trial court's actions must be upheld on appeal."  (*Hewlett-Packard Co. v. Oracle Corp.* (2015) 239 Cal.App.4th 1174, 1187.)  "In determining whether to permit a late motion, the most important consideration is whether the filing advances the anti-SLAPP statute's purpose of examining the merits of covered lawsuits in the early stages of the proceedings.  [Citations.]  Other relevant factors include the length of the delay, the reasons for the late filing and any undue prejudice to the plaintiff."  (*San Diegans for Open Government v. Har Construction, Inc.* (2015) 240 Cal.App.4th 611, 624; see *Platypus Wear, Inc. v. Goldberg, supra,* 166 Cal.App.4th at p. 776 ["[i]n exercising its discretion in considering a party's request to file an anti-SLAPP motion after the 60-day

11

period, a trial court must carefully consider whether allowing such a filing is consistent with [the] purpose" of "ensuring the *prompt* resolution of lawsuits that impinge on a defendant's free speech rights"].)

B. *Analysis*

In finding the motion untimely as to Peterson and Chiropractique, the court focused narrowly on the fact they exceeded the filing deadline by approximately 23 days. However, this case does not present egregious facts like other cases in which courts have found the untimely filing prejudicial. (See, e.g., *Platypus Wear, Inc. v. Goldberg, supra,* 166 Cal.App.4th at pp. 786-787 [anti-SLAPP motion filed more than two years after complaint was filed]; *Kunysz v. Sandler, supra,* 146 Cal.App.4th at p. 1543 [motion was filed nine months after the plaintiff filed a first amended complaint]; *Olsen v. Harbison* (2005) 134 Cal.App.4th 278, 280, [motion filed 278 days after service of the complaint]; *Morin v. Rosenthal* (2004) 122 Cal.App.4th 673, 681; [motion was filed approximately one month late but the trial court concluded, "Here, instead of attempting to promptly expose and dismiss [plaintiff's] suit as a SLAPP, defendants chose to devote their time, energy and resources to moving the case from state court to federal court and, after remand from the federal court, moving the case from one branch of the superior court to another and then from one judge to another in the chosen branch"].)

In light of the purposes of the anti-SLAPP statute, as set forth above (see *San Diegans for Open Government v. Har Construction, Inc., supra,* 240 Cal.App.4th at p. 624), there were other factors that should have guided the court's discretion such as the fact that Liberty's motion was still timely, and there were identical issues that affected all the defendants in this action. The prompt resolution purpose of the anti-SLAPP statute was not served by the court's decision to analyze the issues as to only one party, when as to the

12

other parties the case would have to proceed to a separate resolution, likely involving time delays and high litigation costs. Under the particular circumstances presented here, we conclude the court abused its discretion in concluding the motion was untimely and declining to consider the motion as to Peterson and Chiropractique.

## II. *Arising from Protected Activity*

Defendants contend: "Lacher's [first amended complaint] falls within the protections of the anti-SLAPP statute because: (1) the settlement negotiations and written agreement were made in connection with an issue under consideration or review by a judicial body; (2) the failure to release the funds directly to Lacher was due to an ongoing dispute over the validity of a third party lien against the settlement proceeds that was being litigated; (3) defendants' refusal to release the proceeds directly to Lacher was also based on language in the settlement agreement requiring Lacher to satisfy all liens out of the settlement proceeds and Lacher's refusal to honor the claimed lien; and (4) Lacher's action was filed in direct response to defendants' petitioning activity seeking to interplead the settlement funds given the ongoing dispute." (Some capitalization omitted.)

## A. *Applicable Law*

"[T]he anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern." (*Wilson, supra,* 7 Cal.5th at pp. 883-884.) The statute applies to causes of action against a person that "arise[ ] from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).)

13

"A court evaluates an anti-SLAPP motion in two steps." (*Wilson, supra,* 7 Cal.5th at p. 884.) First, the moving defendant bears the burden of establishing that the challenged allegations or claims arise from protected activity in which the defendant has engaged. (*Ibid.*) Second, if the defendant carries its first-step burden, the plaintiff must then demonstrate its claims have at least minimal merit, meaning "there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) If the plaintiff fails to meet its burden on the second step, the court will strike the claim. (*Wilson,* at p. 884.)

"To determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.'" (*Wilson, supra,* 7 Cal.5th at p. 884.) Courts then must evaluate whether the defendant has shown any of these actions fall within one or more of the four categories of acts protected by the anti-SLAPP statute. (*Ibid.*) Under section 425.16, the four categories of protected activity include: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

Our review is de novo. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.)

B. *Analysis*

As set forth above, defendants' anti-SLAPP motion can fairly be construed as raising two independent bases for satisfying their first-step burden: the parties' settlement agreement, and defendants' interpleader action. But the court did not address the latter issue.

As stated, Lacher in the first amended complaint alleged as to the breach of contract cause of action that "defendants' attorney's retention of the check for reasons outside of the settlement agreement made defendants liable for both breach of contract and breach of the covenant of good faith and fair dealing." The court ruled the breach complained of relates to matters outside of the settlement agreement; specifically, defendants' counsel's separate decision to withhold Lacher's funds that were negotiated in the agreement. The court based its ruling on *Old Republic Construction Program Group v. The Boccardo Law Firm, Inc.* (2014) 230 Cal.App.4th 859, in which the court held that although the parties entering into a stipulation was protected activity, the plaintiff's breach of contract and declaratory relief action did not arise from that entering into the stipulation, but rather from defendants' withdrawal of the funds that were the subject matter of the parties' agreement. Therefore, defendants did not meet their first prong burden under the anti-SLAPP statute. (*Id.* at pp. 869-870.) Strictly speaking, the same analysis applies to Lacher's claims that the breach here is not the parties' entering into a settlement agreement, but rather the defendants' counsel's independent decision to decline to forward the settlement funds to her.

15

But here, there is a separate basis for finding protected activity. Defendants brought an interpleader action before Lacher filed the first amended complaint. The court had also previously granted Lacher's ex parte application requesting the court consider as related cases the malpractice action and the breach of contract and declaratory relief action, which were therefore already before the same trial judge. In her first amended complaint, Lacher made repeated references to the interpleader action, including stating that in conjunction with the interpleader complaint, defense counsel caused Liberty to issue a second settlement draft for depositing the settlement funds with the court. Lacher specifically alluded to the interpleader action as a basis for her claims: "Pending before the court is [Lacher's] motion to enforce the settlement agreement . . . and [d]efendants' [interpleader] motion is for discharge from [the medical malpractice action] and to remit or deposit the settlement funds with the court. Accordingly, an actual controversy exists as to whether there is a breach of contract and the covenant of good faith and fair dealing." Moreover, the relief Lacher sought for both the breach of contract and declaratory relief claims in the first amended complaint—a handing over of the settlement proceeds to her— related to the same settlement funds the defendants sought to properly distribute in the interpleader action. Under these circumstances, defendants correctly argued that Lacher's allegations arose from protected activity as the interpleader action was "an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law" under section 425.16, subd. (e)(2). The court therefore erred by not granting defendants' anti-SLAPP motion, as the interpleader action was protected litigation activity.

16

The court did not have occasion to reach the anti-SLAPP statute's second prong relating to whether Lacher, as the plaintiff, met her burden to establish a probability of prevailing on her claims. (§ 425.16, subd. (b).) The parties cite to cases discussing whether this court should address the second prong as part of its independent review (see, e.g., *Schwarzburd v. Kensington Police Protection & Community Services District Board* (2014) 225 Cal.App.4th 1345, 1355), or remand the matter to the trial court to conduct that inquiry (see, e.g., *Collier v. Harris* (2015) 240 Cal.App.4th 41, 58, and cases cited therein).

We decide the matter ourselves in the interest of judicial economy and the prompt resolution of this case. Besides, the matter is easily resolved based on the undisputed facts in the record. The elements of a breach of contract cause of action are: (1) the existence of a contract; (2) performance (or excuse for nonperformance) by the plaintiff; (3) breach by defendant; and (4) damage to plaintiff. (See *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) Lacher would not be able to show damages from any breach, as she signed the settlement agreement and committed herself to assume responsibility for "any and all" liens "which exist, or in the future may exist on any of the proceeds of the settlement and agrees to satisfy all such rights, liens, claims or rights of reimbursement or recovery." Furthermore, the court, through the interpleader action already accepted defendants' deposit of the settlement funds in the superior court, and Lacher's breach of contract action against defendants relates to those same settlement funds, as shown in her prayer for relief in her first amended complaint.

17

### III. *Lacher's Motion For Dismissal and Sanctions*

#### A. *Contentions*

Lacher argues that Peterson and Chiropractique lack standing to appeal the court's ruling that the motion was untimely as to them because they failed to seek leave of the court to file it or to properly join in Liberty's motion. For that same reason, she also contends the court's order is not appealable as to Peterson and Chiropractique under section 904.1, subdivision (a)(13). Lacher also contends that because the court ruled the anti-SLAPP motion untimely as to Peterson and Chiropractique, and therefore declined to consider it, as to them, there was no order "granting or denying a special motion to strike" that is appealable under section 904.1.

Lacher also seeks monetary sanctions: "No attorney would believe filing an appeal in these circumstances was proper. [She] has suffered significant harm—delay. This appeal being frivolous[,] sanctions are mandated against [Peterson and Chiropractique] and their counsel."

In opposition, Peterson and Chiropractique contend they were not required to seek leave to file an untimely anti-SLAPP motion, and they have standing to appeal the court's ruling regarding an untimely motion. They also contend that Lacher has not demonstrated that sanctions are warranted as she has failed to show they acted in bad faith or filed the appeal solely to cause delay.

#### B. *Analysis*

In *Chitsazzadeh, supra,* 199 Cal.App.4th 676, the trial court found that defendants had filed their anti-SLAPP motion more than 60 days after the service of the complaint, and therefore regarded it as untimely. (*Id.* at p. 679.) The Court of Appeal stated, "We regard the order striking the special motion to strike as a denial of the motion and therefore an appealable order"

18

under section 904.1, subdivision (a)(13). (*Chitsazzadeh, supra,* at p. 682 and fn. 2.)[5] Under *Chitsazzadeh,* we therefore similarly regard the parties as having standing to appeal the court's denial of the motion as to Peterson and Chiropractique, and we decline to dismiss this appeal as to them. We also have ruled the court abused its discretion in ruling the motion was untimely as to Peterson and Chiropractique, thus we need not address this matter further.

Lacher argues the court's order as to Peterson and Chiropractique is non-appealable. She relies on *Hewlett-Packard Co. v. Oracle Corp., supra,* 239 Cal.App.4th at page 1186, which cites to various cases interpreting section 425.16, subdivision (f)'s reference to motions filed after 60 days as empowering "a trial court to require advance leave before the defendant is permitted to file such a motion." In the context of Lacher's motion to dismiss, we need not resolve the differences between *Chitsazzadeh and Hewlett-Packard*; rather, we need only point out that Lacher's motion to dismiss and for sanctions is undermined by still valid case law set forth in *Chitsazzadeh, supra,* 199 Cal.App.4th 676 that does not require a party to seek leave to file an anti-SLAPP motion after 60 days.

Lacher characterizes Peterson and Chiropractique's joinder in Liberty's timely motion as "defective," without setting forth, with citation to legal authority, the proper manner for joining the parties in anti-SLAPP motions. (See *Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1050 [stating the

---

[5] A later decision criticized *Chitsazzadeh*. (*Hewlett-Packard Co. v. Oracle Corp., supra,* 239 Cal.App.4th at p. 1174, fn. 9 ["We question whether that approach conforms to either the letter or the spirit of the statute. It seems to us that appellate recognition of a power in trial courts to strike untimely anti-SLAPP motions would go far to curb the abuses observed in this and many other cases"].) Nevertheless, *Chitsazzadeh* has not been overturned.

well-accepted principle that " 'every brief should contain a legal argument with citation of authorities on the points made,' " and that " '[i]f none is furnished on a particular point, the court may treat it as waived, and pass it without consideration' "].)  We therefore need not consider this point, apart from pointing out that Lacher also recognizes that a possible proper reason for the joint motion was that "the arguments raised in the anti-SLAPP motion were the same for all parties."

Lacher's motions for dismissal and sanctions lacks merit.  "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit."  (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)  Courts must use this power "most sparingly to deter only the most egregious conduct" given the potential chilling effect in taking an appeal.  (*Id.* at pp. 650-651.)  Based on the analysis set forth above, we cannot say that any reasonable attorney would find this appeal totally and completely without merit, particularly as Lacher has failed to demonstrate that the appeal was brought for an improper motive.  Accordingly, we deny Lacher's sanctions request.

## DISPOSITION

The trial court's order denying defendants' special motion to strike is reversed, and the court is directed to enter an order granting the motion. We deny Roslyn Lacher's motion for dismissal and sanctions. Appellants are awarded costs on appeal.

O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

BUCHANAN, J.